847 A.2d 520

**GLENEAGLES, INC., et al.**

v.

**Linda M. HANKS, et al.**

**No. 1502, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 19, 2004.

544

Lance G. Montour (Nancy L. Harrison, on brief), Annapolis, for appellant.

David E. Fink, Baltimore, for appellee.

Argued before JAMES R. EYLER, KRAUSER and SHARER, JJ.

SHARER, J.

In this appeal we are presented with the question of whether, in a workers' compensation case, an employer and insurer can resort to injunctive relief, under the circuit court's plenary equity power, to circumvent the "no stay" provision of Maryland Code Annotated (1999 Repl.Vol.), Labor and Employment Article § 9–741, and thereby delay payment of an award of compensation pending judicial review.

The genesis of this case is a claim filed by appellee, Linda M. Hanks, with the Workers' Compensation Commission ("the Commission"), seeking benefits for an occupational disease contracted in 1990 while employed by appellant, Gleneagles,

Inc.[1] After several proceedings, and substantial delays, an award of compensation was ordered by the Commission on May 9, 2003, awarding Hanks $282 per week (for 333 weeks) from appellant Gleneagles, and $144 per week (for 240 weeks) from the Subsequent Injury Fund ("the Fund"). Because none of the award had yet been paid, and because the award accounted from April 28, 1992, Gleneagles and the Fund were faced with obligations to Ms. Hanks, respectively, of $93,906 and $34,560.

Appellants filed a petition for judicial review of the Commission's decision, asserting primarily the issue of the statute of limitations. They contemporaneously filed, in the Circuit Court for Harford County, a request for an immediate temporary restraining order and a request for stay and/or preliminary injunction, seeking to defer payment of the award until judicial review had been concluded. Of greater significance to appellants is the inability to recoup the funds should they ultimately prevail on the limitations issue. The circuit court, after an in-chambers, off-the-record, conference with counsel for all parties, granted a temporary restraining order on May 27, 2003. The effect of that order was to relieve Gleneagles' insurer and the Fund of the obligation to make immediate payment of the award. On September 19, 2003, following a merits hearing, the court entered an order striking its earlier order and directing payment of the award.[2] This timely appeal followed.

Appellants present one question for review, which, reworded is: [3]

---

1. Gleneagles' insurer, American Manufacturers Mutual Insurance Company, is a party to the claim below, and to this appeal. For clarity, we shall refer to the employer and insurer singularly as Gleneagles.

2. By order of this Court, the amounts ordered to be paid have been placed in escrow pending conclusion of appellate review.

3. As presented in their brief, appellants' issue is:
   Did [the] Circuit Court err in dissolving its prior grant of injunctive relief by finding that it had no authority (or jurisdiction) to grant

May the circuit court enjoin immediate payment of a Workers' Compensation Award, thereby avoiding the "no stay" language of Md.Code Ann. § 9–741?

We answer this question in the negative, and shall affirm the circuit court.

## FACTUAL and PROCEDURAL HISTORY

Although not directly relevant to determination of the legal issue presented by this appeal, we will, to provide context, review the factual and procedural posture of the litigation.

### Proceedings Before the Commission

Ms. Hanks filed a claim for benefits on February 12, 1991, for an occupational disease contracted on the job involving her left and right hands and/or arms. The claimed date of disablement was March 1, 1990. The claim was deemed compensable by the Commission on April 22, 1991, and Gleneagles paid benefits for temporary total disability, temporary partial disability, and/or vocational rehabilitation services for various periods from April 26, 1990, through April 27, 1992. The last payment of compensation was issued on April 20, 1992, for the period from April 14, 1992 through April 27, 1992.

Claiming worsening of her condition, Ms. Hanks filed issues on several later occasions, including a claim on December 8, 1995, for permanent partial disability to the left and right upper extremities, arms, shoulders, and hands. The Commission scheduled a hearing for April 30, 1996, which was continued, at Ms. Hanks' request. On June 7, 1996, Ms. Hanks' attorney requested that the matter be reset for hearing on September 10, 1996. A hearing was scheduled, but was again continued at Ms. Hanks' request. On September 11, 1996, she again requested that the matter be set for hearing, this time between November 6th and 15th, 1996.

---

injunctive relief regarding an Award of Compensation from the Workers' Compensation Commission?

The last request for hearing was followed by new issues requesting authorization for certain medical treatment and payment of medical expenses. At that time, she also asserted an issue of causal connection of her shoulder condition. No request for additional compensation, either temporary or permanent, was then made. In response to the newly filed issues, the Commission scheduled a hearing for November 19, 1996. The hearing was continued, again at the request of Ms. Hanks. Hearings were rescheduled for December 18, 1996, January 13, 1997, and February 11, 1997. All of those hearing were continued—two at the request of Ms. Hanks and one on motion of the Commission.

Finally, a hearing was held on June 5, 1997, concerning issues of medical treatment, medical expenses, and causal relationship as to her shoulders. The hearing also addressed two issues raised by Gleneagles: (1) whether Ms. Hanks should be required to file a new claim for the condition involving her shoulders; and (2) limitations as to the claim relating to her bilateral shoulder condition.

The Commission issued an Order on August 7, 1997, which was amended on September 2, 1997, granting Ms. Hanks' requests for medical treatment and payment of medical expenses, and finding causal relationship of the shoulders. That order denied Gleneagles' issues.

Subsequently, on February 2, 1998, Ms. Hanks filed issues relating to causal relationship of a neck condition, and a hearing was scheduled for October 27, 1998. The hearing was continued on Ms. Hanks' motion made on the day of the hearing.

Her claim remained dormant until September 7, 1999, when Ms. Hanks forwarded a letter to the Commission requesting a hearing on issues of permanent partial disability. Gleneagles contested Ms. Hanks' entitlement to those benefits by filing an issue of limitations on September 28, 1999. A hearing was scheduled for April 10, 2000, but was continued at the request

of Ms. Hanks in order to implead the Subsequent Injury Fund due to the possibility of pre-existing impairments.[4] Ms. Hanks promptly filed issues impleading the Fund. The Fund filed its issues on July 28, 2000. On November 2, 2001, Ms. Hanks filed additional issues, raising permanent total disability.

The case was next set for hearing on July 9, 2002, but was again continued and lay inactive until finally heard by the Commission on May 7, 2003. At that hearing, the Commission promptly addressed all of the issues raised by the parties, and entered an award of compensation on May 9, 2003. The Commission ordered that the claim was not barred by limitations pursuant to Labor and Employment § 9–736(b)(3); and that:

> Ms. Hanks had sustained a permanent partial disability [u]nder "Other Cases" amounting to 60% industrial loss of use of the body, of which 50% is reasonably attributable to the occupational disease of 3/1/90 (both hands, both arms and both shoulders) and 10% of the right wrist due to Thomas which is not compensable and has pre-existing binaural hearing loss (right ear—100%; left ear—92%). In accordance with Section 9–630, claimant has a serious disability.

As a result of the award of compensation, appellants were ordered to pay the sums that we have noted, *supra*. From the order of the Commission, appellants filed a timely petition for judicial review in the circuit court.

---

4. The Subsequent Injury Fund may be impleaded at any stage of the proceeding. Richard P. Gilbert, Robert L. Humphreys, Jr., *Maryland Worker's Compensation Handbook* 228 (1988). "The purpose of the Fund is to encourage employers to hire employees who had been previously injured, and relieve the employer from exposure, as the result of a subsequent injury, from paying compensation for the sum disability resulting from the combined injuries." *Id.* at 229.

In this appeal, the Fund adopted the brief and arguments of appellants Gleneagles and American Manufacturers Mutual Insurance Company. The Fund did not file a brief or participate in oral argument.

*Proceedings Before the Circuit Court*

Contemporaneously with their petition for judicial review, appellants filed a request for an immediate temporary restraining order and a request for stay and/or preliminary injunction. After an off-the-record conference with counsel for all parties on May 22, 2003, the circuit court granted the temporary injunctive relief sought by appellants in an order dated May 27, 2003. A full evidentiary hearing was set for July 28, 2003. After holding the matter *sub curia*, the court issued a thorough memorandum opinion and order dissolving the temporary injunction on the grounds that the circuit court was without jurisdiction to grant a stay of an award of compensation, pursuant to Md.Code Ann. Lab. & Empl. § 9–741, and Maryland Rule 7–205. The findings of the circuit court will be detailed further, *infra*, as necessary.

## STANDARD of REVIEW

We start with the well-established rule that a decision of the Commission is prima facie correct and the burden of proving otherwise on judicial review is upon the party attacking the decision. *Blake Construction Co. v. Wells*, 245 Md. 282, 286, 225 A.2d 857 (1967). That rule, taken together with the mandate that the workers' compensation law, as remedial legislation, is to be liberally construed in favor of the injured worker, forms the foundation for the prohibition of a stay of payment of benefits pending judicial review of the Commission's order.

Ordinarily, a decision of a circuit court regarding the grant or denial of injunctive relief will not be disturbed on appeal absent an abuse of discretion. *Antwerpen Dodge, Ltd. v. Herb Gordon Auto World, Inc.*, 117 Md.App. 290, 305, 699 A.2d 1209 (1997), (*citing Maryland Comm'n on Human Rel. v. Downey Communications, Inc.*, 110 Md.App. 493, 678 A.2d 55 (1996)). If, however, the decision is based on a ruling of law the trial court must "exercise its discretion in accordance with correct legal standards." *Antwerpen Dodge, supra*, 117 Md.App. at 305, 699 A.2d 1209 (quoting *Alston v. Alston*, 331

Md. 496, 504, 629 A.2d 70 (1993)). There being no dispute of fact, we shall review the issue presented on the basis of legal error.

## DISCUSSION

*May the circuit court enjoin immediate payment of a Workers' Compensation Award, thereby avoiding the "no stay" language of Md.Code Ann. § 9–741?*

Appellants argue that the circuit court erred in dissolving its prior grant of injunctive relief by finding that it had no authority or jurisdiction to enjoin the operation of an award of the Commission, and failed to apply the correct legal standard in making its decision. They argue that Md. Rule 7–205 permits a stay of an order or action of an administrative agency,[5] and that application of the court's plenary equity power to issue injunctions is an appropriate vehicle by which to achieve a stay.

Gleneagles also argues that its position is supported by the Commission's own rule, codified as COMAR 14.09.01.24A(4), which directs that attorneys' fees ordered by the Commission be placed in escrow until the 30–day appeal period has passed or, in the event of an appeal, until the appeal has been adjudicated. That provision Gleneagles argues, is precedent for the proposition that payment of an award can, in fact, be stayed.

Ms. Hanks, on the other hand, argues that the "no stay" provision of Md.Code Ann., Lab. & Empl. § 9–741 is absolute. Section 9–741 provides that an appeal of the Commission's decision is not a stay of an order of the Commission requiring payment of compensation. She further asserts that Md. Rule 7–205 is inapplicable because a stay of an order of the Commission is "prohibited by law"—to wit, Lab. & Empl.

---

**5.** Maryland Rule 7–205 provides in pertinent part: "The filing of a petition [for judicial review] does not stay the order or action of the administrative agency. Upon motion and after hearing, the court may grant a stay, unless prohibited by law, upon the conditions as to bond or otherwise that the court considers proper." Md. Rule 7–205 (2003).

§ 9–741. Appellee concludes that, should Gleneagles be able to enjoin payment of the award, appellants will have successfully circumvented the statutory provision directing otherwise. We believe appellee's position to be the correct one.

Md.Code Ann., Lab. & Empl. § 9–741, provides:

**Appeal not a stay**

An appeal [of the Commission's order] is not a stay of:

(1) an order of the Commission requiring payment of compensation; or

(2) an order or supplemental order of the Commission requiring the provision of medical treatment.

The purpose of the "no stay" provision in § 9–741 has been addressed by the Court of Appeals:

Over four decades ago our predecessors proclaimed the validity of the "no stay" clause in § 56(a) [currently codified in Md.Code Ann., Lab. & Empl. § 9–741]. Judge Urner, writing for the Court in *Branch v. Indemnity Insurance Company of North America*, 156 Md. 482, 489, 144 A. 696 (1929), said:

"The right of the Legislature to provide that an appeal from a decision of the State Industrial Accident Commission [now the Workmen's Compensation Commission] shall not be a stay could not be denied consistently with the principle upon which the general validity of the act has been adjudicated. Its design was to ensure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payments of compensation awarded by the commission could be suspended because of an appeal. In providing that an appeal should not be a stay the statute was simply adopting a necessary expedient to accomplish one of the important purposes for which it was enacted."

\*     \*     \*

As we see it, when the Legislature enacted the "no stay" provision in § 56(a) it must have foreseen the possibility,

and as well the probability, that payments would be made to claimants whose awards subsequently would be vacated on appeal. That it made no provision for the restitution of those payments suggests to us that restitution was considered and rejected, and that, in lieu thereof, the disposition of appeals was expedited by giving them precedence over all cases except criminal cases. Surely this can hardly be said to serve any purpose other than the mitigation of the employer's obligation to pay as ordered until the appeal has been decided.

*St. Paul Fire & Marine Ins. Co. v. Treadwell,* 263 Md. 430, 432, 437–38, 283 A.2d 601 (1971). *See also Branch v. Indemnity Ins. Co. of N. America,* 156 Md. 482, 144 A. 696 (1929).

Appellants' arguments require us to interpret the meaning and interrelationship of Lab. & Empl. § 9–741 and Md. Rule 7 205. The cardinal rule of statutory construction is to determine and effectuate the intent of the Legislature. *Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81 (1996) (citing *Shah v. Howard County,* 337 Md. 248, 254, 653 A.2d 425 (1995)). The principal source for determination of legislative intent is the language of the statute itself. *Lovellette v. Mayor & City Council of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983). If the statutory language is clear and unambiguous, we need not look beyond the language to determine legislative intent. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.,* 346 Md. 437, 445, 697 A.2d 455 (1997) (citing *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628 (1987)).

If a statute is ambiguous, or susceptible to more than one meaning, "courts must consider not only the literal or usual meaning of the words but also the meaning of the words in light of the statute as a whole and within the context of the objectives and purposes of the enactment." *Marriott Employees Fed. Credit Union, supra,* 346 Md. at 445, 697 A.2d 455 (citing *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1 (1995)). When interpreting statutes, courts " 'seek to avoid constructions that are illogical, unreasonable, or inconsistent

with common sense.' " *Id.* (quoting *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994)).

█ When considering the validity of a regulation promulgated by an administrative agency, the prevailing standard of review is whether the regulation is " 'consistent with the letter and spirit of the law under which the agency acts.' " *Lussier v. Maryland Racing Comm'n,* 343 Md. 681, 687, 684 A.2d 804 (1996) (quoting *Christ v. Dep't. of Natural Res.,* 335 Md. 427, 437, 644 A.2d 34 (1994) (citations omitted)). The Court of Appeals has consistently held "where the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose." *Lussier, supra,* 343 Md. at 688, 684 A.2d 804.

We shall first dispose of Gleneagles argument that withholding of payment is permitted by the Commission's rules, as codified in COMAR 14.09.01.24A(4). That rule refers only, and specifically, to delayed payment of attorneys' fees until all issues are adjudicated and the order of the Commission is final. In contrast, Lab. & Empl. § 9–741 speaks only, and specifically, to the "payment of compensation." The payment of compensation and payment of attorneys' fees are disparate concepts, governed by separate rules. *See e.g., Washington Area Metropolitan Transit Auth. v. Hewitt,* 153 Md.App. 42, 834 A.2d 985 (2003).

█ As we have noted, the legislative premise of the workers' compensation law is that it is remedial legislation, to be construed as liberally in favor of the injured worker as its provisions will permit in order to effectuate its benevolent purpose. Any uncertainty in the statute must be resolved in favor of the worker unless the plain meaning of the act would dictate otherwise. *See Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757 (1995); *Ewing v. Koppers Co., Inc.,* 69 Md.App. 722, 731, 519 A.2d 790 (1987). While any ambiguity should be resolved in favor of the claimant, we find none here. *See, e.g., Tortuga, Inc. v. Wolfensber-*

*ger,* 97 Md.App. 79, 84, 627 A.2d 56, *cert. denied,* 332 Md. 703, 632 A.2d 1209 (1993), (quoting *Lovellette, supra,* 297 Md. at 282, 465 A.2d 1141); *Cline v. Mayor & City Council of Baltimore,* 13 Md.App. 337, 344, 283 A.2d 188 (1971) (citations omitted).

The "no stay" provision of Lab. & Empl. § 9–741 is firmly ingrained in that legislative scheme. The clear social policy, as enacted by the General Assembly, is that injured workers should not be denied immediate benefits by the seeking of judicial review by opposing parties. As the Court of Appeals pointed out in *St. Paul Fire & Marine Ins. Co. v. Treadwell, supra,* the legislature must have foreseen the possibility that insurers would not be able to recoup benefits paid to a claimant whose award was later vacated on appeal.

The plain language of Lab. & Empl. § 9–741, read in conjunction with Md. Rule 7–205, leads us to the unambiguous conclusion that the "no stay" provision prevails. The "no stay" language the Act would be rendered meaningless if the circuit court's equity power could be utilized to enjoin payment of benefits.

Appellants argue that the trial court missed the mark because they did not request a stay,[6] but instead requested injunctive relief;[7] therefore, they suggest, the court's analysis should have addressed their entitlement to injunctive relief pursuant to Maryland Rule 15–501 *et seq.,* not their lack of entitlement to a stay. While the definition of "stay" and "injunction" are not synonymous, the effect, should appellants' prevail, would be the same. In fact, appellants state in their motion: "Because of the mandatory payment requirements of the Worker's Compensation Act (requiring payment of the

---

**6.** A "stay" is defined as: "[A] suspension of the case or some designated proceedings within it. It is a kind of injunction with which a court freezes its proceedings at a particular point." BLACK'S LAW DICTIONARY 1413 (6th ed.1990).

**7.** Injunction is defined as: "A court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury." BLACK'S LAW DICTIONARY 784 (6th ed.1990).

award by May 24, 2002) immediate, substantial, and irreparable harm would result, i.e., payment would be made to [Hanks] ..." The practical effect of appellants petition for injunctive relief is to obtain a stay of the Commission's order.

We are not persuaded by the arguments of Gleneagles concerning the exercise of the plenary equity powers of the circuit court. The relief they seek was rejected by the General Assembly by the enactment of § 9–741, and its choice not to enact a provision that would entitle an employer and/or insurer to reimbursement for payments made to a worker whose award was later vacated or reduced.

Appellants also rely on Md.Code Ann. (2002 rep. Vol.), Cts. & Jud. Proc. § 1–501 to support their proposition. In that regard, they are essentially hoisted by their own petard, for that statute provides that:

> The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, **except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.**

While the circuit court maintains jurisdiction, its authority to stay the payment of benefits is limited by the provisions of Lab. & Empl. § 9–741.

In holding that the "no stay" provision of Lab. & Empl. § 9–741 cannot be circumvented by application to the circuit court for injunctive relief, we are aware that appellants in this case will be required to make payment of substantial sums without the likelihood of reimbursement should they ultimately prevail.[8] Notwithstanding that possibility, we believe the

---

8. Whether overpayment may be recovered by way of setoff against future benefits arising out of the same claim and the same disability remains an open question. At least one commentary has opined that such recovery would be permissible. *See* Richard P. Gilbert & Robert L. Humphreys, Jr., MARYLAND WORKERS' COMPENSATION HAND-

law to be clear that the General Assembly never intended that an employer and/or insurer have a right of reimbursement in these circumstances. *St. Paul Fire & Mar. Ins. Co., supra; Hoffman v. Liberty Mut. Ins. Co.,* 232 Md. 51, 191 A.2d 575 (1963).

Perceiving neither an abuse of discretion, nor error of law, we affirm the order of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS, EQUALLY.**

---

BOOK, § 7.14 (2d. Ed.1993). That issue is not presented in this appeal; hence, we shall not address it.