854 A.2d 907

## PRINCE GEORGE'S COUNTY DEPARTMENT OF SOCIAL SERVICES

v.

### Telania KNIGHT.

**No. 1725, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

July 20, 2004.

Sandra Barnes (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Johnine N. Clark, Capitol Heights, for appellee.

Panel SONNER, BARBERA and THEODORE G. BLOOM (Retired, specially assigned), JJ.

BLOOM, J.

This appeal by the Prince George's County Department of Social Services (the "Department") is from a judgment of the Circuit Court for Prince George's County reversing an order of the Office of Administrative Hearings (the "OAH"), which denied appellee, Telania Knight, a contested case hearing. According to the OAH, appellee's request for a hearing was untimely.

The circuit court reinstated appellee's request for a contested case hearing upon a finding that, although she had not timely submitted all of the documents required to be filed in order to obtain a hearing to appeal a finding of "indicated" child abuse, she had substantially complied with the conditions for appeal in that she had timely submitted sufficient documentation to put the OAH on notice that she was requesting a contested case hearing. Concluding that the OAH action was arbitrary, the court remanded the case to the OAH to conduct the requested hearing.

## APPLICABLE STATUTES

We begin with a brief summary of the applicable statutes.

Maryland Code (1984, 1999 Repl.Vol., 2003 Cum.Supp.), Title 5 of the Family Law Article [1] is devoted to the topic

---

1. Unless otherwise specified, all statutory references in this opinion are to the Family Law Article of the Annotated Code of Maryland.

"Children." Subtitle 7 of Title 5 is concerned with the subject of *"Child Abuse and Neglect."* Within that subtitle, § 5–701 contains definitions of certain terms; § 5–702 sets forth the legislative policy; § 5–704 deals with the obligation of health practitioners, police officers, educators, and human services workers, who have reason to believe that a child has been subjected to abuse or neglect, to notify appropriate departments or agencies; § 5–706 concerns the investigation of such reports; and § 5–706.1 sets forth the obligations of local departments of social services once a finding of either "indicated" or "unsubstantiated" abuse or neglect is made and, if a finding of "indicated" abuse or neglect is made, the right of a person alleged to have abused or neglected the child to obtain an administrative hearing to appeal that finding. Section 5–706.1 provides, in pertinent part:

(a) *Notice.*—Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall notify in writing the individual alleged to have abused or neglected a child:

(1) of the finding;

(2) of the opportunity to appeal the finding in accordance with this section; and

(3) if the individual has been found responsible for indicated abuse or neglect, that the individual may be identified in a central registry as responsible for abuse or neglect under the circumstances specified in § 5–714(e) of this subtitle.

(b) *Hearing to appeal finding of indicated abuse or neglect.*—(1) In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article by responding to the notice of the local department in writing within 60 days.

\*    \*    \*

## FACTS

In accordance with § 5–706 of the Family Law Article, the Department conducted an investigation into a report of sus-

pected child abuse by appellee upon her minor son, Corey Knight. On making a finding of "indicated" abuse, the Department undertook to give written notice to appellee as required by § 5–706.1. The Department sent, by mail addressed to appellee at her address as it appeared in the Department's records, two documents, each containing information and forms on the obverse and reverse sides of a single sheet of paper.

The first document, dated March 4, 2002, and captioned "NOTICE OF ACTION/OPPORTUNITY TO APPEAL INDICATED CHILD ABUSE OR NEGLECT" (the "notice form"), informed appellee that she was identified as responsible for the "indicated" abuse of her son and informed her that she could appeal that finding by requesting in writing, "within 60 days of the date of this notice," a hearing through the OAH. It also informed appellee that if she did not file an appeal within 60 days, or was unsuccessful in her appeal, or was convicted of a crime arising out of the alleged abuse, she may be identified as a person responsible for "indicated" child abuse or neglect in a central registry, which is part of the Department's confidential computerized data base. The identity and address of the Department appeared at the bottom of the front side of the notice document.

The reverse side of the notice form, captioned "APPEAL PROCEDURES," set forth the procedures for requesting a contested case hearing. It informed appellee that she must complete and submit to the OAH:

1) the enclosed CHILD ABUSE AND NEGLECT CONTESTED CASE HEARING REQUEST form,

2) a copy of this NOTICE OF ACTION/OPPORTUNITY TO APPEAL,

3) a filing fee of $15.00 payable to *The Maryland State Treasurer.*

It specifically stated in bold type:

**All three of these items must be submitted to the Office of Administrative Hearings in Hunt Valley, Maryland**

**(complete address is on the Hearing Request form) within 60 days of the date on the front side of this form or your appeal will be DISMISSED.**

As noted above, the form was dated March 4, 2002.

The front side of the enclosed second form, captioned "CHILD ABUSE AND NEGLECT CONTESTED CASE HEARING REQUEST" (the "hearing request form"), and bearing the same date, March 4, 2002, contained the mailing address of the OAH and informed appellee:

> To file an appeal, complete this *entire* form. Provide all requested information, sign the form, and mail it to the above address. You *must* include with this appeal form a $15.00 filing fee made payable to the Maryland State Treasurer and a copy of the "Notice of Action/Opportunity for and [sic] Appeal" form that you received from the Department of Social Services. . . .

On the back of the hearing request form were printed questions as to whether criminal charges or a Child in Need of Assistance case had been brought, and blank spaces were provided for appellee's answers. Spaces were also provided for the name and address of appellee's legal counsel, if any, and for appellee's signature, social security number, and the date.

Appellee filled out the front of the hearing request form and mailed it to the OAH, together with a Travelers Express money order in the amount of $15.00, on April 30, 2002. They were received by the OAH on May 1, 2002, and the OAH immediately mailed them back to appellee because she had not enclosed the notice form and she had not filled out the reverse side of the hearing request form. Appellee received the returned documents on Friday, May 3. There is no dispute that on May 6, 2002, she sent them back with the required additional material and information.

On May 17, 2002, the Administrative Law Judge issued an order dismissing appellee's appeal as untimely filed. In doing so, she computed that the last day to perfect the filing of the appeal by mailing the notice form, the hearing request form,

and the $15.00 money order was May 3, 2002. That calculation was based on Code of Maryland Regulations ("COMAR") 07.02.26.05, titled "Request for Appeal":

A. Indicated child abuse or neglect: An individual found responsible for indicated child abuse or neglect may appeal the finding by

(1) Requesting in writing an appeal form from the local department; and

(2) Not later than 60 days after the date the local department issued the notice of action, returning the appeal form to OAH with:

(a) The required filing fee, and

(b) A copy of the notice of action

     \*   \*   \*

C. Failure of a party to comply with the requirements in this regulation shall result in dismissal of the appeal.

     \*   \*   \*

The circuit court concluded that appellee, by timely filing the hearing request form together with the required fee, had substantially complied with the statute and the regulation, and that it was an abuse of discretion for the OAH to dismiss the appeal instead of merely requiring appellee to submit the notice form within a reasonable time thereafter.

## ISSUE

In this appeal, the Department contends that, as a matter of law, the OAH properly denied the appellee a contested case hearing on the basis that, despite full notice of her obligations, she failed to perfect her appeal in a timely fashion. We reject the Department's contention and shall affirm the judgment of the circuit court, but not on the basis for that court's decision.

## STANDARD OF REVIEW

As the Court of Appeals has explained:

"A court's role in reviewing an administrative agency adjudicatory decision is narrow . . .; it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' . . ."

*Marzullo v. Kahl,* 366 Md. 158, 171, 783 A.2d 169 (2001) (citations omitted). "We respect the expertise of the agency and accord deference to its interpretation of a statute that it administers . . .; however, we 'may always determine whether the administrative agency made an error of law.' " *Watkins v. Sec'y, Dep't of Pub. Safety & Correctional Services,* 377 Md. 34, 46, 831 A.2d 1079 (2003) (citation omitted).

When considering the validity of a regulation promulgated by an administrative agency, the prevailing standard of review is whether the regulation is "consistent with the letter and spirit of the law under which the agency acts." . . . The Court of Appeals has consistently held "where the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose."

*Gleneagles, Inc. v. Hanks,* 156 Md.App. 543, 847 A.2d 520 (2004).

### DISCUSSION

Under a proper construction of the meaning and intent of § 5–706.1, it is apparent that appellee timely filed her request for a contested case hearing.

Section 5–706.1(b)(1) states:

In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article *by responding to the notice of the local department in writing within 60 days.*

(Emphasis added.) The statute does not say 60 days from the date the local department issued the notice of action. It says

that one may appeal a finding of indicated abuse by responding to the notice of that finding within 60 days. What constitutes the notice that triggers the 60-day filing period? *Issuance* of the document titled "NOTICE OF ACTION/OPPORTUNITY TO APPEAL INDICATED CHILD ABUSE OR NEGLECT," or *receipt* of that document?

According to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1544 (1981), the word "notice" is derived from the Latin *"notitia "* [and] *"notus* (past part[iciple] ) of *noscere,"* meaning: "to become acquainted with." Principle or primary meanings of the noun "notice" are knowledge, intelligence, intimation, and warning. *See id. See also* THE OXFORD AMERICAN ENGLISH DICTIONARY OF CURRENT ENGLISH 538 (1999). "Notice" may also mean "a formal or informal warning or intimation of something," or an "announcement," *see* WEBSTER'S at 1544, such as the document that the Department mailed to appellee.

Because we are interpreting the meaning of a statute, the noun "Notice" in BLACK'S LAW DICTIONARY, SEVENTH EDITION, 1999, is particularly significant:

> **notice,** n. **1.** Legal notification required by law or agreement, or imparted by operation of law as a result of some fact (such as the recording of an instrument); definite legal cognizance, actual or constructive of an existing right or title <under the lease, the tenant must give the landlord written notice 30 days before vacating the premises>. ●A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received a notice of it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording. . . .

Did the General Assembly intend to allow a person found by a local department of social services to be responsible for child abuse to perfect an appeal for up to 60 days from knowledge of that finding, or 60 days from whatever date the local department put on the written notice, regardless of when the notice was received? The words "by responding to the notice

of the local department in writing within 60 days," § 5–706.1(b)(1), indicate that the legislative intent was to allow 60 days from the receipt of the written "notice" to appeal. One cannot "respond" to a written "notice" until he or she receives it.

Moreover, other language in Subtitle 7 of Title 5 of the Family Law Article indicates a legislative intent to protect the right of appeal from a finding of responsibility for "indicated" child abuse, apparently because of the serious consequences of "fail[ing] to exercise the appeal rights within the time frames specified in § 5–706.1 . . ., Title 10, Subtitle 2 of the State Government Article, or the Maryland Rules," § 5–714(b)(2)(iii), *i.e.*, being listed in a central registry as a person "found responsible for indicated . . . child abuse," § 5–714(b)(2). Subsection (h) of § 5–714, titled *"Regulations,"* (1) *directs* the Secretary of Human Resources to "adopt regulations necessary to *protect* the rights of individuals suspected of abuse or neglect," and (2) *permits* the Secretary to "adopt regulations to implement the provisions" of § 5–714. (Emphasis added.)

There is no time frame specified in Title 10, Subtitle 2 of the State Government Article for the filing of a request for a contested case hearing to appeal a finding of responsibility for "indicated" child abuse. The only references to the time within which such a request must be filed are those set forth in § 5–706.1(b)(1) and COMAR 07.02.26.05, subject to such limitations or calculations as are contained in the Maryland Rules.

■■ As stated above, we interpret § 5–706.1(b) as allowing an individual found to be responsible for "indicated" child abuse or neglect to appeal that finding by requesting a contested case hearing by the OAH within 60 days after receiving notice of that finding. Accordingly, we conclude that COMAR 07.02.26.05, by limiting the time for appeal to 60 days after the date on the written "NOTICE OF ACTION/OPPORTUNITY TO APPEAL INDICATED CHILD ABUSE OR NEGLECT," is in conflict with that statute. Moreover, that

regulation is contrary to the statutory authority to promulgate it. Instead of adopting a regulation to protect the rights of individuals suspected of abuse or neglect as directed by § 5–714(h)(1), the Secretary of Human Resources diminished those rights by shortening the time for requesting a contested case hearing. We hold, therefore, that the regulation is invalid.

■ There was no evidentiary hearing on appellee's Petition for Judicial Review of the dismissal of her request for a contested case hearing. Consequently, although the circuit court's Memorandum Opinion makes reference to appellee's assertion that she did not receive the notice and appeal documents dated March 4, 2002, which had been mailed to her former address, until April 10, 2002, there was no factual finding with respect to the actual date of appellee's receipt of those documents. Had there been an evidentiary finding by the court with respect to the date appellant received the Notice of Action and the form for requesting a contested case hearing, the sixty-day-period within which to appeal would have started as of that date. In the absence of such a finding, we look to the Maryland Rules for guidance.

If there is no evidence to the contrary, there is a reasonable inference that the Department mailed its notice documents on March 4, 2002, the date shown on both documents. Maryland Rule 1–203 contains several provisions relevant to our determination of the 60–day period of time within which appellee could respond to that notice in order to appeal the Department's finding of responsibility for indicated abuse. Section (a) of Rule 1–203 states, in pertinent part:

> In computing any period of time prescribed by these rules, by rule or order of court, or by *any applicable statute,* the day of the act, event, or default after which the designated period of time begins to run is not included. . . .

(Emphasis added). Section (c) of Rule 1–203, in effect, establishes a presumption with respect to how much time to allow for delivery of mail:

> Whenever a party has the right or is required to do some act or take some proceeding within a prescribed period after

service upon the party of a notice or other paper and service is made by mail, three days shall be added to the prescribed period.

*See also* COMAR 28.02.01.03 D (indicating that a hearing request to the OAH is deemed filed on the earlier of the date it is postmarked or the date that it is received by the OAH).

Applying these two sections of Rule 1–203 to this case, we conclude that appellee had 63 days from March 4, 2002 (the date on the notice documents and, inferentially, the date on which they were mailed), counting March 5 as the first day, that is, until May 6, within which to mail to the OAH her request for a contested case hearing. Appellee mailed both documents—the "NOTICE OF ACTION/OPPORTUNITY TO APPEAL INDICATED CHILD ABUSE OR NEGLECT" and the "CHILD ABUSE AND NEGLECT CONTESTED CASE HEARING REQUEST"—together with the required $15.00 fee to the OAH on May 6, 2002. Her appeal from the finding of responsibility was timely filed. Therefore, we affirm the judgment of the circuit court that reversed the dismissal of appellee's request for a contested case hearing and remanded the case to the OAH to conduct the requested hearing.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

Concurring Opinion by SONNER, J.

I concur. I agree with the position taken by the majority in sustaining the court below. I could also have affirmed on the ground relied upon by the circuit court—that the Office of Administrative Hearings (the "OAH") acted arbitrarily and that appellee had substantially complied with the OAH'S appeal procedures by returning two of the three items that the OAH requested. However, I do not write separately to comment upon the basis for the remand. Instead, I wish to underscore the injustice that would result from sustaining the OAH's position, denying the appellee a contested hearing.

The State, as appellant, asked for us to deny appellee the right to challenge a bureaucratic conclusion that she abused her son, a conclusion which foisted the label "child abuser" upon her—a labeling with substantial injurious collateral consequences—and cast her into the child abuser registry for life. *See* Sandra Barnes, *Business Records or Badges of Infamy?, Maryland's Central Registry of Alleged Child Abusers and Neglectors,* 30 Md. B.J. 24, 24 (2003) (noting that "being labeled on a central registry of child abusers and neglectors is often devastating" and that Maryland's current system "not only provokes [devastation or criticism] but also fails to serve those who are charged with protecting children"). The State would have us overturn the lower court and completely deny appellee a hearing simply because she failed to fully complete and return all of the hearing request forms.

The State does not suggest that affording appellee a hearing would infringe upon some substantial governmental interest. Rather, the best that it could muster in oral argument for reversal is that appellee, by returning only one of the two documents she had received in the mail, prevented the Office of Administrative Hearings from expediently determining from which county the alleged abuse investigation came. This argument is wholly unpersuasive. The administrative burden that would result from having to match the mail with a file seems Liliputian in comparison with the damage that could result to the life of appellee from being labeled a child abuser. Furthermore, the Prince George's County Department of Social Services could have eliminated the burden by simply including the name of the county on all of the forms it mailed to appellee.

A practice more in keeping with the intention of the General Assembly in creating the registry would be to accord a fair process to those who are in jeopardy of having their names added to the central registry. *See Montgomery County Dep't of Soc. Serv. v. L.D.,* 349 Md. 239, 264, 707 A.2d 1331 (1998). The State, as the representative of the people as well as of the government, should be particularly attentive to the need for due process when doling out the label of child abuser. Equal-

ly imperative to the State should be a desire to have the list not compromised by having, among those labeled as child abusers, some innocent people whose only offense has been the inability to navigate the administrative process of achieving a hearing. Denying a hearing to the appellant under the facts of this case would have been unfair, unjust, and not in the public interest.

This case is not the only Maryland case that seems to exhibit insensitivity by the State to concerns about due process and the accuracy of the registry. Since the enactment of the legislation creating the central registry, the State has unsuccessfully pursued positions in the courts that have called for limiting the legitimate rights of those who face the personal consequences of an administrative determination that their conduct indicates child abuse. *See, e.g., C.S. v. Prince George's County Dept. of Soc. Serv.,* 343 Md. 14, 22, 34, 680 A.2d 470 (1996) (unsuccessfully "arguing that judicial review was not provided for in the statute and that the provisions of the Administrative Procedure Act (APA) providing judicial review in some cases do not apply to findings of indicated child abuse"); *see also Dep't of Human Res. v. Thompson,* 103 Md.App. 175, 193, 652 A.2d 1183 (1995) (unsuccessfully arguing that DSS's determination of child abuse precludes a potential day care licensee from challenging the merits of the finding in a subsequent licensing proceeding even though she was never afforded any forum to challenge DSS's decision).

Without a doubt, the public interest demands that the State do all that it can to protect children from child abuse, and the central registry is a recognized means for carrying forth the public mandate. *See Hodge v. Jones,* 31 F.3d 157, 164 (4th Cir.1994). But the administration of the registry calls for striking a balance to assure that the government is fair to all involved. *See C.S. v. Prince George's County Dept. of Soc. Serv.,* 343 Md. at 30, 680 A.2d 470. Had the state's position prevailed, the balance would have been skewed and justice would have suffered.