935 A.2d 493

Angela HAYWARD

v.

**DEPARTMENT OF HUMAN RESOURCES, Baltimore City Department of Social Services.**

William Dixon

v.

**Department of Human Resources, Baltimore City Department of Social Services.**

Nos. 1962, 1963, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Nov. 7, 2007.

---

Jeffrey M. Ross (Keith J. Zimmerman, Kahn, Smith & Collins, PA., on the brief), Baltimore, for appellant.

Sandra Barnes (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: MURPHY, C.J., ADKINS, RAYMOND G. THIEME, JR., (Ret'd, Specially Assigned), JJ.

RAYMOND G. THIEME, JR., Judge, Retired, Specially Assigned.

This appeal from the Circuit Court for Baltimore City arises from the denial by the Department of Human Resources for Baltimore City's Department of Social Services of the requests of two employees for a "conference" pursuant to § 5–706.1(c)(1) of Md.Code (2006 Repl.Vol.), Family Law Article ("FL").

Appellants Angela Hayward, an instructional aide, and William Dixon, a teacher, were employed by the Baltimore City Public School System ("BCPSS") at all times relevant to this appeal. In December 2005, the Department of Human Resources for Baltimore City's Department of Social Services (the "Department") received child abuse allegation reports against both appellants. After Department investigation, both cases were concluded "unsubstantiated."

Appellants requested a "conference" to review the Department's redacted investigation records and potentially request corrections and/or supplements, pursuant to FL § 5–706.1(c)(1). The Department denied both requests on the ground that the findings were "unsubstantiated" and neither appellant was "found responsible" for the alleged child abuse and so not entitled to a conference. Denial of the conference request left appellants unable to appeal. Subsequently, appellants filed for Writ of Mandamus in the Circuit Court for Baltimore City, each requesting that the court reverse the Department's decision and order that it must grant the request for a conference in compliance with FL § 5–706.1(c). The Department moved to dismiss in both cases, after which appellants moved for summary judgment. The cases were consolidated, and on October 2, 2006, the court granted the Department's motion, disposing of the cases and leaving appellants with no alternative legal remedy. Subsequently, appellants appealed to this Court and jointly moved to consolidate. This appeal duly followed and appellants pose these two questions for our review:

## QUESTIONS PRESENTED

I. DO APPELLANTS HAVE THE RIGHT TO AP-
 PEAL THE DEPARTMENT'S UNSUBSTANTIAT-
 ED FINDINGS, PURSUANT TO MD. CODE FAM.
 LAW § 5–706.1(c), EVEN THOUGH THEY WERE
 NOT "FOUND RESPONSIBLE" FOR UNSUB-
 STANTIATED CHILD ABUSE?

II. DID THE CIRCUIT COURT FOR BALTIMORE
 CITY ERR IN DISMISSING APPELLANTS' COM-
 PLAINTS FOR WRIT OF MANDAMUS?

For the following reasons, we answer "yes" to both questions.

## STATEMENT OF FACTS

### I. Ms. Angela Hayward

Hayward has been employed by BCPSS since 1991 and beginning the 2005–06 school year worked as a Special Education Instructional Aide at Lafayette Elementary School. On December 14, 2005, in a report to the Department, Hayward was accused of physically abusing one of her students. Department caseworker Jacqueline Martin was assigned to investigate, met with Hayward and counsel on February 2, 2006, and by letter informed her the allegations were found "unsubstantiated" on May 15, 2006. Hayward was told that there was insufficient evidence and that she was not named as the alleged abuser. Appellant's request for conference pursuant to FL § 5–706.1(c) followed.

### II. Mr. William Dixon

Mr. Dixon has been employed by BCPSS since 2000 and beginning the 2005–06 school year worked as a teacher at Govans Elementary School. On December 26, 2005, Mr. Dixon was accused of physically abusing one of his students by way of a report to the Department. Department caseworker Lance Green was assigned to investigate, met with Mr. Dixon and counsel on December 22, 2006, and by letter informed Dixon the allegations were found "unsubstantiated" on April 6, 2006. Dixon was told that there was insufficient evidence and

that he was not named as the alleged abuser. Appellant's request for conference pursuant to FL § 5–706.1(c) followed.

Both appellants requested separately that the Department provide them with a conference to review the records pursuant to FL § 5–706.1(c),[1] and both were denied.[2] The Department sent letters sent to appellants informing them of that denial. The Department's denials were sent by Anis Ahmed, Special Coordinator, Intake and Assessment and read: [3]

> We are in receipt of your letter which requests an appeal regarding the decision of "unsubstantiated" child physical abuse against your client, [appellant]. As a result of your request, I have reviewed the case record and found that your client [appellant], **was not identified** as the alleged abuser. Only an individual who is "identified" has the right to appeal the department's decision.
>
> **COMAR 07.02.26.05** provides that "An individual found responsible for indicated child abuse or neglect may appeal the finding. . . ." Since your client, [appellant], was not identified as the responsible party [he/she] is not eligible for an appeal.

In response, appellants respectively filed complaints for Writ of Mandamus in the circuit court.

## STANDARD OF REVIEW

In *Prince George's County Dept. Of Social Services v. Knight*, 158 Md.App. 130, 854 A.2d 907 (2004), this Court stated:

---

1. Hayward sent her conference request, through counsel, on May 17, 2006. Dixon sent his first conference request, through counsel, on April 25, 2006, and a renewal of that request on May 24, 2006.

2. Hayward's letter denying her request for conference was dated May 22, 2006, and Dixon's letter was dated May 31, 2006.

3. The Department in its letters to both Hayward and Dixon improperly quoted text from COMAR 07.02.26.05A discussing "Indicated Child Abuse or Neglect" as opposed to the proper above-mentioned COMAR 07.02.26.05B discussing "Unsubstantiated Child Abuse or Neglect." This Court will discuss hereinafter the relationship between the appropriate COMAR regulation 07.02.26.05B and FL § 5–706.1(c).

"A court's role in reviewing an administrative agency adjudicatory decision is narrow . . .; it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.'

*Marzullo v. Kahl,* 366 Md. 158, 171, 783 A.2d 169 (2001) (citations omitted). "We respect the expertise of the agency and accord deference to its interpretation of a statute that it administers . . .; however, we 'may always determine whether the administrative agency made an error of law.'" *Watkins v. Sec'y, Dep't of Pub. Safety & Correctional Services,* 377 Md. 34, 46, 831 A.2d 1079 (2003) (citation omitted).

When considering the validity of a regulation promulgated by an administrative agency, the prevailing standard of review is whether the regulation is "consistent with the letter and spirit of the law under which the agency acts." The Court of Appeals has consistently held "where the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose."

*Gleneagles, Inc. v. Hanks,* 156 Md.App. 543, 847 A.2d 520 (2004).

*Id.* at 137, 854 A.2d 907 (citations omitted); *see also Fields v. Dept. of Human Resources,* 176 Md.App. 152, 932 A.2d 824 (2007).

## DISCUSSION

### I.

 FL § 5-706.1(c) states, in pertinent part:

(c) *Conference to review redacted record on finding of unsubstantiated abuse or neglect*—(1) In the case of a finding of unsubstantiated abuse or neglect, an individual may request a conference with a supervisor in the local

department by responding to the notice of the local department in writing within 60 days.

(2) In response to a timely request for a conference, a local department supervisor shall schedule a conference, to occur within 30 days after the supervisor receives the request, to allow the individual an opportunity to review the redacted record and request corrections or to supplement the record.

The statute is clear and mandates the "local department supervisor *shall* schedule a conference, to occur within 30 days after the supervisor receives the request, to allow the individual an opportunity to review the redacted record and request corrections or to supplement the record." *Id.* There is no limiting language in the statute consistent with COMAR rule 07.02.26.05, cited in the Department's letter.

In *Montgomery County Dept. of Social Services v. L.D.*, 349 Md. 239, 707 A.2d 1331 (1998) (holding individuals were entitled to full contested case hearings before their names were entered into Automated Master File (AMF) and Client Information System (CIS) databases as suspected child abusers and/or neglecters), the Court of Appeals stated, "[W]here the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Montgomery County Dept. of Social Services* briefly addresses the process established in FL § 5-706(c) and explains:

[W]ithin ten days of receiving the request for an administrative hearing, the local department is required to forward to OAH the request for the administrative hearing. § 5-706.1(c). *See also* § 5-706.2(b) (requiring the Department to forward to OAH all reports and records regarding the case upon the accused's request for a hearing). *If the local department has not changed its findings to "ruled out," the records must be transferred to the OAH and the accused can then request an in camera review of the full report or*

*record* by an ALJ "to determine the accuracy and sufficiency of the report or record." § 5–706.2(a).

349 Md. at 248–49, 707 A.2d 1331 (emphasis added).

■ In the case at bar, the Department did not find the allegations of child abuse against Hayward or Dixon as "ruled out" or "indicated." [4] It did find that both cases were "unsubstantiated," with no particular individual found responsible for the alleged abuse. The term " 'unsubstantiated' means a finding that there is an insufficient amount of evidence to support a finding of indicated or ruled out." FL § 5–701(y). Thus, the Department, in finding that abuse allegations were "unsubstantiated," could not find them "ruled out" by definition, and in turn some level of suspicion remains.

■ Appellee does not deny that the alleged abuse was not "ruled out," but does contend that, because neither appellant was "identified as the alleged abuser," as stated in both letters, they do not possess a statutory right to a conference or appeal. Under the rule of *L.D.,* it is clear that without a finding of "ruled out" the individuals involved in a case of indicated or unsubstantiated child abuse or neglect maintain all rights set out in FL § 5–706.1(c)(1). Additionally, in the words of appellee's brief, "[i]t is ... well settled that 'the construction of a law by the agency charged with its enforcement, acquiesced in by the legislature, is entitled to great weight and should not be disregarded except for the strongest and most urgent reasons.' " *Bereano v. State Ethics Com'n,* 174 Md.App. 146, 167, 920 A.2d 1137 (2007) (quoting *Jackson Marine Sales, Inc., v. State Dep't of Assessments and Taxation,* 32 Md.App. 213, 217, 359 A.2d 228 (1976)). And further that "great deference" should be given to the administration's interpretation of a FL § 5–706.1.

The COMAR regulation at issue states, in pertinent part:

---

4. "Ruled out" means a finding that abuse, neglect, or sexual abuse did not occur. FL § 5–701(w). "Indicated" means a finding that there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur. FL § 5–701(m).

B. Unsubstantiated Child Abuse or Neglect. An individual *found responsible* for unsubstantiated child abuse or neglect may appeal the finding by forwarding to the local department, not later than 60 days after the date the local department issued the notice of action, a written request for a conference.

COMAR 07.02.26.05B (emphasis added).

Conversely, in the words of the appellants' brief,

COMAR 07.02.26.05B operated on the basis of language not contained in FL § 5–706.1(c). Neither the phrase "found responsible," nor the word "responsible" exists anywhere in FL § 5–706.1(c). . . . COMAR 07.02.26.05B conflicts with FL § 5–706.1(c)(1) by limiting the rights to appeal in unsubstantiated cases to individuals "found responsible," whereas FL § 5–706.1(c)(1) contains no such limit. In this conflict FL § 5–706.1(c) must prevail, and COMAR 07.02.26.05B may not be given effect to deprive Appellants of their rights under FL § 5–706.1(c).

■ We agree that "great deference" should be given to the Administration's interpretation, but we must note that COMAR regulations do not bear the same weight as the annotated code. "The Legislature enacts statutes. Administrative agencies adopt, amend and repeal regulations under the authority granted to them by statutes. Unless the Legislature has created an exemption, agencies must follow the procedures in the Administrative Procedure Act when adopting, amending or repealing regulations." COMAR, Office of the Secretary of State, Division of State Documents, at http://www.dsd.state.md.us/comar/comar.htm (last modified 15 January 2007).

In *Cecil County Dept. of Social Services v. Russell,* 159 Md.App. 594, 861 A.2d 92 (2004), this Court discussed Family Law, Subtitle 7, Child Abuse and Neglect, and pointedly stated, "Where the language of a statute differs from relevant language in a departmental regulation, the statutory language must control." *Id.* at 611, 861 A.2d 92.

In *Knight,* the Court of Special Appeals discussed the discrepancies between FL § 5–706(b)(1) and COMAR 07.02.26.05A. The statute states that, "in the case of a finding of indicated abuse or neglect, an *individual may request a contested case hearing to appeal the finding* in accordance with Title 10, Subtitle 2 of the State Government Article *by responding to the notice of the local department in writing within 60 days."* FL § 5–706(b)(1) (emphasis added). The COMAR regulation states, in pertinent part:

An individual found responsible for indicated child abuse or neglect may appeal the finding by: (1) Requesting in writing an appeal form from the local department; and (2) *Not later than 60 days after the date the local department issued the notice of action,* returning the appeal form to OAH . . . .

07.02.26.05A(1),(2) (emphasis added). The *Knight* Court reasoned that nowhere in the statute does the "60–day" requirement identify a point at which that time period begins to toll and questions "[w]hat constitutes the notice that triggers the 60–day filing period?" *Knight,* 158 Md.App. at 138, 854 A.2d 907. The Court further discussed what "notice" is and determined that the regulation is not "consistent with the letter and spirit of the law under which the agency acts" because it narrowly defines a part of the statute which was not meant to be so strictly construed. *Id.* at 137, 854 A.2d 907.

As stated above, we interpret § 5–706.1(b) as allowing an individual found to be responsible for "indicated" child abuse or neglect to appeal that finding by requesting a contested case hearing by the OAH within 60 days after receiving notice of that finding. Accordingly, we conclude that COMAR 07.02.26.05, by limiting the time for appeal to 60 days after the date on the written "NOTICE OF ACTION/OPPORTUNITY TO APPEAL INDICATED CHILD ABUSE OR NEGLECT," is in conflict with that statute. Moreover, that regulation is contrary to the statutory authority to promulgate it. Instead of adopting a regulation to protect the rights of individuals suspected of abuse or neglect as directed by § 5–714(h)(1), the Secretary

of Human Resources diminished those rights by shortening the time for requesting a contested case hearing. We hold, therefore, that the regulation is invalid.

*Id.* at 139–40, 854 A.2d 907.

*Knight's* holding parallels the case at bar in that it balances the linguistic relationship between FL § 5–706.1 and COMAR 07.02.26.05. Knight discusses different subsections and particulars of the statute and its sister COMAR regulation, but the reasoning is the same. In the case at bar, COMAR 07.02.26.05B confines the "Unsubstantiated Child Abuse or Neglect" subsection of the regulation to only those individuals who have been "found responsible" of said unsubstantiated abuse or neglect. Conversely, the corresponding statute, FL § 5–706.1(c), makes no mention of any requirement that the individual be "found responsible"; instead the focus is on whether the case itself resulted in "a finding of unsubstantiated abuse or neglect." Moreover, without a right to conference, appellants Hayward and Dixon can do nothing to clear their names. As persons suspected and involved in child maltreatment cases that were found "unsubstantiated," their names are, for five years, listed in the central registry. They are not listed as persons found guilty of abuse or neglect *per se*, but their personal information is identifiable in relation to there having been an accusation and a subsequent investigation. In addition, BCPSS, the employer of both appellants, is by copied letter on notice that neither case was "ruled out" because there was not enough evidence to determine whether or not the alleged abuse did in fact take place. And, as a result of the report/investigation, it has been "recommended" that appellant Hayward "receive additional training in methods of child restraint in order to avoid future incidents of inappropriate physical contact with children." The aftermath of these "unsubstantiated" findings are undeniably detrimental personally and occupationally; innocent persons, just as persons held "responsible," ought to have an opportunity to clear their names and remove them entirely from that registry.

FL § 5–714, captioned "Child abuse or neglect central registry—In general," discusses what information is listed in

the central registry and when and under what circumstances expungement is permitted. The statute in pertinent part says:

(a) *Maintenance.*—The Social Services Administration and each local department may maintain a central registry of cases reported under this subtitle.

(b) *Source of Information.*—(1) Each local department shall provide the information for a central registry.

(2) Except for identifying information authorized under subsection (d) of this section, a central registry may not include information from a local department case file until any individual found responsible for indicated or unsubstantiated child abuse or neglect has:

(i) been found guilty of any criminal charge arising from the alleged abuse or neglect;

(ii) unsuccessfully appealed the finding in accordance with the procedures established under § 5–706.1 of this subtitle; or

(iii) failed to exercise the appeal rights within the time frames specified in § 5–706.1 of this subtitle, Title 10, Subtitle 2 of the State Government Article, or the Maryland Rules.

(c) *Availability of information.*—The information in a central registry shall be at the disposal of:

(1) the protective services staff of the Administration;

(2) the protective services staffs of local departments who are investigating a report of suspected abuse or neglect; and

(3) law enforcement personnel who are investigating a report of suspected abuse or neglect.

(d) *Identifying information.*—(1) Except as provided in paragraph (2) of this subsection, and subject to subsection (e) of this section, a central registry may contain identifying information related to an investigation of abuse or neglect.

(2) A central registry may not contain identifying information related to an investigation of abuse or neglect if:

(i) abuse or neglect has been ruled out; or

(ii) the abuse or neglect finding has been expunged in accordance with § 5–707(b)(1) of this subtitle.

(e) *Identification of responsible individual.*—(1) The Department or a local department may identify an individual as responsible for abuse or neglect in a central registry only if the individual:

(i) has been found guilty of any criminal charge arising out of the alleged abuse or neglect; or

(ii) has been found responsible for indicated abuse or neglect and has:

1. unsuccessfully appealed the finding in accordance with the procedures established under § 5–706.1 of this subtitle; or

2. failed to exercise the individual's appeal rights within the time frames specified in § 5–706.1 of this subtitle, Title 10, Subtitle 2 of the State Government Article, or the Maryland Rules.

(2) The Department without the necessity of a request shall remove from the name of an individual described in paragraph (1) of this subsection the identification of that individual as responsible for abuse or neglect if no entry has been made for that individual for 7 years after the entry of the individual's name in a registry.

FL § 5–714(a)–(e).

FL § 5–714(a)–(e) addresses all information to be included in the central registry, who has access to it, and when it might be removed. A "central registry" is "any component of the Department's confidential computerized database that contains information regarding child abuse and neglect investigations." FL § 5–701(d)(1). *Identifying information,* subsection (d) of 5–714, states that the "central registry may contain identifying information related to an investigation of abuse or neglect," but it may not contain that same information if the case has been either "ruled out" or "expunged in accordance with FL § 5–707(b)(1)." The "identifying information" of appellants Hayward and Dixon is, as a result of this case, in

the registry and available to protective services of both the administration and local departments as well as law enforcement personnel. That information when accessed presents an obvious correlation between the names identified and reported allegations of child maltreatment.

Any connection with the central registry, even mere inclusion of "identifying information," has an inherently negative effect on the employer/employee relationship and should give rise to appellants' right to clear themselves of that detriment. Denying appellants the right to an appeal leaves them with a blemished record and no opportunity to defend themselves. *Knight, supra.* Judge Sonner, in his concurring opinion, wrote of the "injustice that would result [if this Court had sustained] the OAH's position [in *Knight* ], denying the appellee a contested hearing." *Knight,* 158 Md.App. at 141, 854 A.2d 907.

As mentioned above, the *Knight* Court addresses a "time for filing" issue in relation to a discrepancy between the appropriate Family Law statute and its sister COMAR regulation. The State asked that the mother, accused of child abuse, be denied a hearing because she failed to fully complete and return the proper request forms. Judge Sonner pointed out that the State's request is "unfair, unjust, and not in the public interest" and that:

> Without a doubt, the public interest demands that the State do all that it can to protect children from child abuse, and the central registry is a recognized means for carrying forth the public mandate. But the administration of the registry calls for striking a balance to assure that the government is fair to all involved. Had the state's position prevailed, the balance would have been skewed and justice would have suffered.

158 Md.App. at 143, 854 A.2d 907 (citations omitted). The same injustice would result if appellants in the case at bar, whose identifying information was placed in the central registry despite a finding of insufficient evidence, were denied their

right to appeal and thus their opportunity to clear their names.

## II.

The Court of Appeals in *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 752 A.2d 200 (2000), explained that a Writ of Mandamus

> "is a summary remedy, for the want of a specific one, where there would otherwise be a failure of justice. It is based upon reasons of justice and public policy, to preserve peace, order and good government."
>
> As a prerogative writ, the authority to issue mandamus rests within the sound discretion of the court, but that discretion must "be exercised under the rules long recognized and established at common law." In addition, Circuit Courts of this State have been statutorily conferred with the power and discretion they enjoyed under the common law to issue writs of mandamus.

*Id.* at 708, 752 A.2d 200 (citations omitted). It is well established that mandamus ought be granted when there is no alternative legal remedy and "[w]hence the inference is plainly deducible, ... this Court may, and of right ought, for the sake of justice, to interpose in a summary way to supply a remedy where, for the want of a specific one, there would otherwise be a failure of justice." *Id.* at 712, 752 A.2d 200 (quoting *Runkel v. Winemiller*, 4 H. & McH. 449 (Gen. Ct. Oct. Term 1799)).

The Circuit Court for Baltimore City erred when it refused to issue mandamus and dismissed the cases of appellants Hayward and Dixon on the ground that it left them with no alternative means to legally resolve their dispute.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; COSTS ASSESSED TO APPELLEE.**