45 A.3d 224

DEPARTMENT OF HUMAN RESOURCES, BALTIMORE
CITY DEPARTMENT OF SOCIAL SERVICES

v.

Angela HAYWARD and William Dixon.

No. 131, Sept. Term, 2007.

Court of Appeals of Maryland.

May 23, 2012.

640

Sandra Barnes, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Keith J. Zimmerman (Kahn, Smith & Collins, P.A., Baltimore, MD), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE (Retired, Specially Assigned), IRMA S. RAKER (Retired, Specially Assigned), and DALE R. CATHELL (Retired, Specially Assigned), JJ.

BELL, C.J.

We granted certiorari in this case to determine whether an individual accused of, but not found responsible for, child abuse or neglect has a right to appeal [1] when a local department's investigation of the accusation results in a finding of "unsubstantiated." The Court of Special Appeals answered this question in the affirmative, *Hayward v. Dep't of Human Res.*, 177 Md.App. 402, 935 A.2d 493 (2007), and, so, reversed

---

1. Section 5–706.1, in subsections (b) and (c), provides for a review procedure, which it denominates an "appeal." This "appeal" as we shall see, *infra*, is an intra-agency procedure and does not refer to the judicial review of an administrative decision by a court. This Court has made clear that the "judicial review" process is not an appellate process, *Shell Oil Co. v. Supervisor*, 276 Md. 36, 43–47, 343 A.2d 521, 525–528 (1975) (because the Tax Court is an administrative agency exercising quasi-judicial functions, "review of a Tax Court decision is an exercise of original and not appellate judicial jurisdiction"). *See Kim v. Comptroller of the Treasury*, 350 Md. 527, 534, 714 A.2d 176, 179 (1998) ("Although often misinterpreted to be an appeal, this Court has repeatedly emphasized that an action for judicial review of an administrative decision is an original action. It is not an appeal."); *Prince George's County v. Beretta U.S.A. Corp.*, 358 Md. 166, 174, 747 A.2d 647, 651 (2000); *Driggs Corp. v. Maryland Aviation*, 348 Md. 389, 399, 704 A.2d 433, 438 (1998) ("As we have made clear, a petition for judicial review of an administrative order invokes the original, not the appellate, jurisdiction of the circuit court"); *Motor Vehicle Administration v. Delawter*, 403 Md. 243, 256–57, 941 A.2d 1067, 1076 (2008), *Motor Vehicle Administration v. Shea*, 415 Md. 1, 14–15, 997 A.2d 768, 775–76 (2010), *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571–72, 873 A.2d 1145–55 (2005), *Christopher v. Montgomery County HHS*, 381 Md. 188, 197–99, 849 A.2d 46, 51–52 (2004). Being able to appeal pursuant to § 5–706.1(c), is, however, a prerequisite to the right of that party to obtain judicial review.

the judgment of the Circuit Court for Baltimore City, which had dismissed a mandamus action seeking that relief. We agree and, thus, affirm.

## I. Background

At all times relevant to this appeal, the respondents, Angela Hayward, an instructional aide, and William Dixon, a teacher, were employed by the Baltimore City Public School System ("BCPSS"). In December, 2005, in separate cases, the petitioner, the Department of Human Resources for the Baltimore City Department of Social Services (the "Department") received reports accusing the respondents of committing child abuse. In each case, a Department caseworker was assigned the task of conducting an investigation, and, in each case, at the conclusion of the investigation, the Department issued a finding of "Child Physical Abuse—Unsubstantiated." The respondents, along with their employer, BCPSS, were notified of the "unsubstantiated" finding, which, as it was explained to the respondents, meant "that there was insufficient evidence to support a finding of indicated or ruled out." As a result, neither respondent was "named as the alleged abuser." Nevertheless, the respondents' names were entered into the central registry [2] of child abuse investigations.

Both respondents, in separate cases, requested, pursuant to Maryland Code (1984, 2006 Repl.Vol., 2011 Supp.) § 5–706.1(c) [3] of the Family Law Article ("FL"), that the Depart-

---

**2.** "Central registry" is defined, by Maryland Code (1984, 2006 Repl. Vol., 2011 Supp.) § 5–701(d) of the Family Law Article ("FL"), with the exception of a "local department case file," as "any component of the Department's confidential computerized database that contains information regarding child abuse and neglect investigations." We discussed the Department's central registry and its effect in *Montgomery County Dept. of Soc. Servs. v. L.D.,* 349 Md. 239, 707 A.2d 1331 (1998).

**3.** FL § 5–706.1(c) provides:
 "(c) *Conference to review redacted record on finding of unsubstantiated abuse or neglect.*—(1) In the case of a finding of unsubstantiated abuse or neglect, an individual may request a conference with a supervisor in the local department by responding to the notice of the local department in writing within 60 days.

ment provide them with a conference "to review the Department's redacted investigation records and potentially request corrections and/or supplements .…" *Hayward v. Dep't of Human Res.*, 177 Md.App. 402, 405, 935 A.2d 493, 495 (2007). The Department denied the requests and, in identical letters to each respondent, explained:

"We are in receipt of your letter which requests an appeal regarding the decision of 'unsubstantiated' child physical abuse against your client, [respondent]. As a result of your request, I have reviewed the case record, and found that your client, [respondent], **was not identified** as the alleged abuser. Only an individual who is 'identified' has the right to appeal the department's decision.

"COMAR 07.02.26.05 provides that "An individual found responsible for indicated child abuse or neglect may appeal the finding.…" Since your client, [respondent], was not identified as the responsible party [he/she] is not eligible for an appeal."

(Emphasis in original). Faced with an interpretation of FL § 5–706.1 and the regulations promulgated pursuant to, and in clarification of, it that precluded appeal when the finding of

---

"(2) In response to a timely request for a conference, a local department supervisor shall schedule a conference, to occur within 30 days after the supervisor receives the request, to allow the individual an opportunity to review the redacted record and request corrections or to supplement the record.

"(3) Within 10 days after the conference, the local department shall send to the individual:

"(i) a written summary of the conference and of any modifications to be made in the record; and

"(ii) notice of the individual's right to request a contested case hearing in accordance with paragraph (4) of this subsection.

"(4) (i) The individual may request a contested case hearing in accordance with subsection (b) of this section to appeal the outcome of the conference by responding to the summary in writing within 60 days.

"(ii) If the individual does not receive the written summary and notice specified in paragraph (3) of this subsection within 20 days, the individual may request a contested case hearing.

"(iii) An individual may request a contested case hearing in the case of a finding of unsubstantiated abuse or neglect only as provided in this paragraph."

the investigation was "unsubstantiated," the respondents sought review of that interpretation by filing mandamus actions in the Circuit Court for Baltimore City. The petitioner subsequently filed motions to dismiss in both cases, and the respondents moved for summary judgment. The Circuit Court, after consolidating the actions, granted the petitioner's motion, thus disposing of the cases.

The Court of Special Appeals reversed the judgment of the Circuit Court, concluding that it would be unjust if the respondents, "whose identifying information was placed in the central registry despite a finding of insufficient evidence, were denied their right to appeal and thus their opportunity to clear their names." *Hayward,* 177 Md.App. at 416–17, 935 A.2d at 501. The intermediate appellate court, thus, held that "[t]he Circuit Court for Baltimore City erred when it refused to issue mandamus and dismissed the cases of . . . Hayward and Dixon on the ground that it left them with no alternative means to legally resolve their dispute." *Id.,* 177 Md.App. at 417, 935 A.2d at 502. The Department petitioned this Court for a writ of certiorari, which we granted, *Social Services v. Hayward,* 403 Md. 304, 941 A.2d 1104 (2008). The issue we are asked to consider is whether "the Department of Human Resources properly interpreted the law as providing standing to appeal solely to individuals found responsible for 'unsubstantiated' or 'indicated' child abuse or neglect and, if not, what is the scope of the appeal right?" We shall hold, like the Court of Special Appeals, that the Department failed to interpret FL § 5–706.1(c) properly, and that individuals who are investigated by a local department, with a resultant finding of "unsubstantiated," have a right to appeal, regardless of any additional findings of actual responsibility.

## II. Writ of Mandamus

Although, at bottom, the issue to be resolved is the correctness of the Department's interpretation of FL § 5–706.1, it is presented in the context of the common law writ of mandamus; under review is the Circuit Court's dismissal of the respondents' consolidated Complaints for Writ of Manda-

mus. We begin, therefore, with a review of the nature and office of that writ. Ordinarily, mandamus does not lie where the action to be reviewed is discretionary or depends on personal judgment. *Goodwich v. Nolan,* 343 Md. 130, 145, 680 A.2d 1040, 1047 (1996); *Board of Education of Prince George's County v. Secretary of Personnel,* 317 Md. 34, 46, 562 A.2d 700, 706 (1989); *In re Petition for Writ of Prohibition,* 312 Md. 280, 305–06, 539 A.2d 664, 676 (1988); *see also Tabler v. Medical Mutual Liability Insurance Society,* 301 Md. 189, 202, 482 A.2d 873, 880 n. 7 (1984); *Bovey v. Executive Director, HCAO,* 292 Md. 640, 646, 441 A.2d 333, 337 (1982); *Maryland Action for Foster Children v. State,* 279 Md. 133, 138–39, 367 A.2d 491, 494 (1977). Indeed, the writ generally is used "to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 514, 331 A.2d 55, 72 (1975); *see also Nolan,* 343 Md. at 145, 680 A.2d at 1047; *George's Creek Coal & Iron Co. v. County Commissioners,* 59 Md. 255, 259 (1883). It also "is a summary remedy, for the want of a specific one, where there would otherwise be a failure of justice." *State ex rel. McClellan v. Graves,* 19 Md. 351, 374 (1863). That is true even where discretionary actions are the subject of the review. *Nolan,* 343 Md. at 146, 680 A.2d at 1048. That office is also well settled. *State Department of Assessments and Taxation v. Clark,* 281 Md. 385, 401, 380 A.2d 28, 37 (1977); *Gould,* 273 Md. at 503, 331 A.2d at 66; *State Insurance Commissioner v. National Bureau of Casualty Underwriters,* 248 Md. 292, 302, 236 A.2d 282, 287 (1967); *Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73, 76 (1945). In this State, mandamus is considered to be "in the nature of a prerogative writ," as well as "an extraordinary remedy." *Ipes v. Board of Fire Com'rs of Baltimore,* 224 Md. 180, 183, 167 A.2d 337, 339 (1961). "Circuit Courts of this State have been statutorily conferred with the power and discretion ... to issue writs of mandamus," however, "that discretion must be

exercised under the rules long recognized and established at common law," which provide that mandamus is proper where a party would otherwise have no avenue for legal recourse. *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 708, 752 A.2d 200, 210 (2000) (quoting *Hardcastle v. Md. & Del. R.R. Co.,* 32 Md. 32, 35 (1870)) (internal quotation marks omitted). Accordingly, this Court has recognized that, "prior to granting a writ of mandamus to review discretionary acts, there must be both a lack of an available procedure for obtaining review and an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable." *Nolan,* 343 Md. at 146, 680 A.2d at 1048. An agency's actions will be classified as arbitrary and capricious if they are "unreasonabl[e] or without a rational basis...." *Harvey v. Marshall,* 389 Md. 243, 297, 884 A.2d 1171, 1204 (2005) (quoting Arnold Rochvarg, *Maryland Administrative Law,* § 4.38 at 128 (2001, 2004 Supp.)).

This case reaches this Court in a somewhat unusual circumstance. As indicated, dispositive of the resolution of this case is the determination of which of the interpretations of FL § 5–706.1(c) offered by the parties and it is this difference in interpretation that precipitated the mandamus action. Although the respondents have, at all times, interpreted FL § 5–706.1(c) as affording them the right to a conference and subsequently an appeal,[4] the Department, relying also on

---

**4.** In cases in which an investigation returns a finding of "unsubstantiated," § 5–706.1(c) provides for a conference, followed by a contested case hearing pursuant to the Maryland Administrative Procedure Act (APA), Maryland Code (1984, 2004 Repl.Vol., 2011 Supp.) § 10–201 et seq. of the State Government Article ("SG"). The contested case hearing is for the purpose of allowing the complaining party to "appeal the outcome of the conference." FL § 5–706.1(c)(4). SG § 10–202(d) defines a "Contested case" as "a proceeding *before an agency* to determine ... a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for agency hearing...." (Emphasis added).

The "appeal," which is at issue here, is that intra-agency contested case hearing, which is only available when, in "unsubstantiated" cases, a § 5–706.1(c) conference has been sought and held. Thereafter, in order for an individual to access the courts for judicial review of the agency decision, he or she would have to be "a party who is aggrieved by the final decision in a contested case...." SG § 10–222(a)(1).

COMAR regulations promulgated pursuant to and in clarification of the statute, reached a contrary interpretation, one that restricted conference and appeal to those "found responsible" for "unsubstantiated" child abuse or neglect. Acknowledging the Department's interpretation, but not accepting it, indeed, believing it to be erroneous, the respondents used it as the basis for its mandamus action,[5] arguing that the Department's interpretation of § 5–706.1(c) establishes that there is "a lack of an available procedure for obtaining review," and offering their contrary interpretation of that statute as the basis for the court to conclude that the denial of their right to appeal is "illegal, arbitrary, capricious or unreasonable." *Nolan,* 343 Md. at 146, 680 A.2d at 1048. Thus, rather than being called upon to make a mandamus determination based, primarily, on the facts of the case before it, in the case *sub judice,* the Circuit Court was required to engage in statutory interpretation in order to resolve the controversy.

■ The petitioner—the Department—does not dispute that the effect of its interpretation of § 5–706.1(c) is to restrict the respondents' entitlement to a conference and, thus an appeal, and that this results in the occurrence of one of the circumstances that our cases indicate entitle a party to mandamus relief. Indeed, the respondents, with ample justification,

---

Therefore, the individual affected by an "unsubstantiated" finding, who is denied a conference under § 5–706.1(c), is not only foreclosed from an intra-agency appeal, but is thereby also denied the opportunity for judicial review of the agency's decision.

5. The respondents thus challenged the petitioner's interpretation of § 5–706.1(c) indirectly, rather than directly, which they could, and would, have done had they appealed the denial. There was nothing to prevent their having done so; they are and were not bound by the petitioner's interpretation. Indeed, had the respondents appealed and if the respondents' contrary interpretation of § 5–706.1(c), that it does grant a right to appeal to persons in their position, is correct, then the Circuit Court's dismissal of the Complaints for Writ of Mandamus would have been proper, since such a remedy is only available in the absence of another means of challenging the contested action. As we have seen, the respondents did not appeal and the record reflects that the petitioner has not challenged their right to have proceeded as they did, by mandamus. Accordingly, we will not further address the propriety of the option the respondents pursued.

could have argued that they were entitled to administrative mandamus pursuant to Maryland Rule 7–401.[6]

As we will demonstrate below, the plain language of § 5–706.1 expressly provides a right to conference, and, subsequently, to appeal, whenever the investigation of an individual for child abuse or neglect results in an "unsubstantiated" finding. The Department, however, did not apply the statute as required by its plain language and, consequently, foreclosed to respondents the right to appeal and ultimately judicial review. Had the Department adhered to the express directives of § 5–706.1, the respondents would have had access to appeal procedures and, thus, would not have been required to—nor been able to—request a writ of mandamus. The Circuit Court drew two erroneous conclusions: the first was to adopt the Department's interpretation of § 5–706.1, that the respondents were not entitled to a conference or an appeal; the second, only erroneous as a result of the first, was to dismiss the respondents' Complaints on those grounds. This misinterpretation of the statute, as we see it, was unreasonable and, in effect, was "arbitrary" and "capricious." *Nolan,* 343 Md. at 146, 680 A.2d at 1048; *Marshall,* 389 Md. at 297, 884 A.2d at 1204.

### III. Statutory Interpretation

▉▉▉▉▉ We now review, in greater detail, the Department's interpretation of § 5–706.1. It is a well-settled principle that the primary objective of statutory interpretation is "to ascertain and effectuate the intention of the legislature." *Oaks v.*

---

6. This Court has consistently recognized that, in the absence of a review mechanism, a writ of mandamus may be issued in response to the action of an administrative agency. *Heaps v. Cobb,* 185 Md. 372, 380, 45 A.2d 73, 76 (1945); *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 708, 752 A.2d 200, 210 (2000). That principle was reiterated and codified upon the promulgation, in 2005, of the Chapter 400 Rules under Title 7, effective Jan. 1, 2006. Those Rules acknowledge a special kind of mandamus action, "Administrative Mandamus." Rule 7–401(a) provides:

> "The rules in this Chapter govern actions for judicial review of a quasi-judicial order or action of an administrative agency where review is not expressly authorized by law."

*Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). The first step in this inquiry is to examine the plain language of the statute, and "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). Thus, "where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Montgomery County Dept. of Social Services v. L.D.,* 349 Md. 239, 264, 707 A.2d 1331, 1343 (1998). Furthermore, "[w]ords may not be added to, or removed from, an unambiguous statute in order to give it a meaning not reflected by the words the Legislature chose to use. . . ." *Smack v. Dept. of Health and Mental Hygiene,* 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003) (citation omitted).

 We also are mindful that this Court's review of an agency's decision is narrow. *United Parcel Service, Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994). When we interpret a statute that governs an administrative body, "a degree of deference should often be accorded the position of the administrative agency," and the "agency's interpretation and application of the statute which [it] administers should ordinarily be given considerable weight by reviewing courts." *Marzullo v. Kahl,* 366 Md. 158, 172, 783 A.2d 169, 177 (2001) (citations omitted). While we are certainly not to "substitute [our] judgment for the expertise of those persons who constitute the administrative agency," it remains our role to determine "if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel,* 336 Md. at 576–77, 650 A.2d at 230.

The petitioner's construction of FL § 5–706.1 is colored by its conclusion that subsection (a) is ambiguous and, thus, must be interpreted as clarified by COMAR 07.02.07.16B and, espe-

cially, COMAR 07.02.26.05B. With regard to the ambiguity, it reasons that, while § 5–706.1(a) requires the Department to provide notice, in cases of "indicated" or "unsubstantiated" abuse or neglect, to individuals "alleged to have abused or neglected a child," and in subsections (b) and (c), as to each, prescribes a right to an appeal, the statute does not indicate *who* must make the abuse or neglect allegation. COMAR 07.02.07.16B resolves this ambiguity, the petitioner submits, by requiring a local department, prior to closing its record of investigation, to "send notice to the individual *found responsible for alleged abuse or neglect* of the finding and, if applicable, of the right to appeal under COMAR 07.02.26," [7] (empha-

---

7. COMAR 07.02.26.04, which addresses "Notice of Opportunity for a Hearing," provides:

"A. Within 30 days after a local department has completed an investigation of child abuse or neglect, the local department shall send individuals found responsible for indicated or unsubstantiated child abuse or neglect a notice of action.

"B. The notice shall include:

"(1) The finding;

"(2) An explanation of how to appeal in accordance with this chapter, including the obligation to pay a filing fee;

"(3) A statement that the local department may identify an individual as responsible for child abuse or neglect in a central registry if the individual:

"(a) Is found guilty of any criminal charge arising out of the alleged abuse or neglect; or

"(b) Has been found responsible for indicated child abuse or neglect and has:

"(i) Unsuccessfully appealed the finding in accordance with this chapter, or

"(ii) Has failed to appeal in accordance with this chapter, State Government Article, '10–222, Annotated Code of Maryland, or the Maryland Rules; and

"(4) Notice of the individual's obligation to notify OAH of any criminal or CINA proceedings arising out of the alleged child abuse or neglect.

"C. A local department may send a single notice if an individual is found responsible for:

"(1) Abuse or neglect of more than one child; or

"(2) More than one incident of abuse or neglect of one child.

"D. The local department shall send the notice to the individual at the address noted in the record.

"E. When child abuse is alleged in an out-of-home setting where more than one child has allegedly been abused or neglected, the local

sis added). Reading the statute and the regulation together, the petitioner concludes that the "alleged" abuser, referenced in § 5–706.1(a), both must have been identified as such by a local department and been "found responsible" for the abuse or neglect before any notice is required to be provided or the rights set forth in subsection (c) are triggered. The petitioner, thus, distinguishes between "individuals alleged by a local department to have abused or neglected a child [and who] are entitled to appeal an agency's finding," and individuals who are "only 'suspected' of having abused or neglected a child," who are not entitled to such an appeal. Stated differently, individuals who are the subject of abuse or neglect allegations by parties other than the Department are, according to the petitioner, simply "suspected" of such conduct, which, for the purposes of § 5–706.1(a), is distinct from Department "alleged" abuse or neglect. The petitioner places the respondents in the "suspected" category, and reasons, therefore, that since the necessary triggering notice is unavailable to individuals like them, who are simply investigated, but not "found responsible" for alleged abuse, the respondents' requests rightfully were denied.

The petitioner finds additional support for its position in COMAR 07.02.26.05B, which provides:

"Unsubstantiated Child Abuse or Neglect. An individual *found responsible* for unsubstantiated child abuse or neglect may appeal the finding by forwarding to the local department, not later than 60 days after receipt of the local department's notice of action, a written request for a conference."

---

department shall send notice not later than 30 days after the investigation of the out-of-home setting is complete.

"F. Minor Found Responsible for Child Abuse or Neglect. If the individual found responsible for child abuse or neglect is younger than 18 years old and not emancipated, the local department shall send notice to the individual's:

"(1) Parent or legal guardian; and

"(2) Attorney if the individual is a foster child and is represented."

(Emphasis added). The petitioner argues that this regulation also clarifies what it perceives to be the ambiguous language of FL § 5–706.1(a). Specifically, the petitioner, in its brief, asserts that this regulation, like COMAR 07.02.07.16B, decidedly establishes that "[o]nly individuals found responsible for child abuse or neglect may appeal findings of unsubstantiated or indicated child abuse."

The petitioner also argues that the Court of Special Appeals failed to accord the appropriate level of deference to the Department's construction of FL § 5–706.1. It accordingly urges this Court to treat the agency's construction deferentially and, consequently, uphold the Department's decision.

The respondents do not agree that § 5–706.1(a) is, in any way, ambiguous. Indeed, they believe it to be clear and unambiguous. They argue, conversely, therefore, that COMAR 07.02.26.05B, on which the Department heavily relies, rather than clarifying § 5–706.1(c), as the petitioner argues, actually conflicts with its unambiguous language. The respondent notes, in that regard, that the phrase, "found responsible," is nowhere found in subsection (a) or (c), nor does § 5–706.1, at any time, use the word "responsible" in setting forth the departmental findings that entitle an individual to appeal the results of a conference. Accordingly, they submit, COMAR 07.02.26.05B, by including this additional limiting language, conflicts with § 5–706.1(c) and, most important, it does so in a manner that deprives the respondents of their rights. In addition, the respondents note that "the Department's definition of an 'alleged abuser' as an individual 'found responsible' for abuse, is an oxymoron" since "[o]nce an individual has been 'found responsible,' it makes no sense to continue to refer to that person as an 'alleged abuser.' "

 Applying the applicable principles of statutory construction to the case *sub judice,* it is readily apparent that § 5–706.1(c), read together with § 5–706.1(a), establishes clear guidelines regarding the rights of accused individuals following an investigation by the Department which results in a finding of "unsubstantiated." There is no ambiguity in its

terms concerning the rights that are implicated in "indicated" and "unsubstantiated" abuse cases; its language sets forth, with a great deal of clarity, that individuals as to whom allegations have been determined to be unsubstantiated are entitled to an appeal process. Thus, it was unnecessary to look beyond the plain language of § 5–706.1 for further guidance, *Jones,* 336 Md. at 261, 647 A.2d at 1206–07 and, consequently, the petitioner's reliance on COMAR 07.02.26.05B is misplaced.

FL § 5–706.1 prescribes the notice, conference and hearing requirements, as well as the appeal rights, applicable to individuals who have been investigated by the Department with respect to child abuse or neglect when the investigation culminates in either a finding of "indicated," or "unsubstantiated." FL § 5–701(y) defines "unsubstantiated," the finding that resulted from the Department's investigation of the respondents, as a conclusion "that there is an insufficient amount of evidence to support a finding of indicated or ruled out." A finding of "indicated," on the other hand, is defined by § 5–701(m) as a finding that demonstrates "credible evidence which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur." [8] A third possible finding

---

**8.** The appeal rights of a person as to whom an "indicated" finding is made are set forth in FL § 5–706.1(b). It provides:

"(b) *Hearing to appeal a finding of indicated abuse or neglect.*—(1) In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article by responding to the notice of the local department in writing within 60 days.

"(2) Unless the individual and the department agree on another location, a contested case hearing shall be held in the jurisdiction in which the individual alleged to have abused or neglected a child resides.

"(3)(i) If a criminal proceeding is pending on charges arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall stay the hearing until a final disposition is made.

"(ii) If after final disposition of the criminal charge, the individual requesting the hearing is found guilty of any criminal charge arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall dismiss the administrative appeal.

category, "ruled out", is not addressed by FL § 5–706.1, as it indicates a conclusion by the Department "that abuse, neglect, or sexual abuse did not occur." FL § 5–701(w).

After an investigation, the Department determined that the allegations of abuse made against the respondents were "unsubstantiated." FL § 5–706.1(a) governs notice and prescribes when, to whom and of what it is to be given. It provides:

"(a) *Notice*—Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall notify in writing the individual alleged to have abused or neglected a child:

"(1) of the finding;

"(2) of the opportunity to appeal the finding in accordance with this section; and

"(3) if the individual has been found responsible for indicated abuse or neglect, that the individual may be identified in a central registry as responsible for abuse or neglect under the circumstances specified in § 5–714(e) [9] of this subtitle."

---

"(4)(i) If a CINA case is pending concerning a child who has been allegedly abused or neglected by the appellant or a child in the care, custody, or household of the appellant, the Office of Administrative Hearings shall stay the hearing until the CINA case is concluded.
"(ii) After the conclusion of the CINA case, the Office of Administrative Hearings shall vacate the stay and schedule further proceedings in accordance with this section."

9. FL 5–714(e) provides:
"(e) Identification of responsible individual.—(1) The Department or a local department may identify an individual as responsible for abuse or neglect in a central registry only if the individual:
(i) has been found guilty of any criminal charge arising out of the alleged abuse or neglect; or
(ii) has been found responsible for indicated abuse or neglect and has:
1. unsuccessfully appealed the finding in accordance with the procedures established under § 5–706.1 of this subtitle; or

According to the plain language of § 5–706.1, the respondents were clearly entitled to notice. Moreover, there is no dispute that, with regard to the "unsubstantiated" finding, the respondents received timely notice.[10]

The purpose of the notice that an investigation resulted in an "unsubstantiated" finding is made clear by § 5–706.1(c). That subsection, which expressly addresses "Conference to review redacted record on finding of unsubstantiated abuse or neglect," sets forth the procedures available, and the rights applicable, to individuals who have received notice of such finding from the Department. It advises:

"(1) In the case of a finding of unsubstantiated abuse or neglect, an individual may request a conference with a

2. failed to exercise the individual's appeal rights within the time frames specified in § 5–706.1 of this subtitle, Title 10, Subtitle 2 of the State Government Article, or the Maryland Rules.

(2) The Department without the necessity of a request shall remove from the name of an individual described in paragraph (1) of this subsection the identification of that individual as responsible for abuse or neglect if no entry has been made for that individual for 7 years after the entry of the individual's name in a registry.

10. Section 5–706.1(a)(2) requires notice of "the opportunity to appeal the finding." Clearly as to individuals as to whom the investigation determined the abuse or neglect was "indicated," that would implicate subsection (b). That there is no discrete section addressing the appeal of an "unsubstantiated" finding does not mean that subsection (a)(2) does not apply to persons as to whom such a finding applies. Certainly, although not so neat as subsection (b), the post notice rights prescribed in subsection (c), including the right to request "a contested case hearing in accordance with subsection (b) of this section to appeal the outcome of the conference" fall rather nicely within the concept of "appeal rights." Given the petitioner's position, it is safe to assume that the respondents were not given this notice.

The notice required by subsection (a)(3) is not applicable, by its own terms, to a subject of an "unsubstantiated" finding of abuse or neglect. That notice must be given only "if the individual has been found responsible for indicated abuse or neglect," and, therefore, is intended only for those found to have abused or neglected a child. It follows that the registry should not list the names of those whose investigation report concluded that the alleged abuse or neglect was "unsubstantiated." It is unclear whether the respondents were informed that their names would be listed in the registry.

supervisor in the local department by responding to the notice of the local department in writing within 60 days. "(2) In response to a timely request for a conference, a local department supervisor shall schedule a conference, to occur within 30 days after the supervisor receives the request, to allow the individual an opportunity to review the redacted record and request corrections or to supplement the record. "(3) Within 10 days after the conference, the local department shall send to the individual:

"(i) a written summary of the conference and of any modifications to be made in the record; and

"(ii) notice of the individual's right to request a contested case hearing in accordance with paragraph (4) of this subsection.

"(4) (i) The individual may request a contested case hearing in accordance with subsection (b) of this section to appeal the outcome of the conference by responding to the summary in writing within 60 days.

"(ii) If the individual does not receive the written summary and notice specified in paragraph (3) of this subsection within 20 days, the individual may request a contested case hearing.

"(iii) An individual may request a contested case hearing in the case of a finding of unsubstantiated abuse or neglect only as provided in this paragraph."

The respondents both properly and timely complied with subsection (c)(1): within 60 days of receiving the notice from the local board, they responded, in writing, with a request for a conference. Notwithstanding that subsection (c)(2) requires the local department supervisor, in response to a timely request, to schedule a conference, the Department denied those requests. In so doing, it also denied the respondents the right to any judicial review. *See supra* note 4. This is because, under § 5–706.1(c)(4), the right to an appeal, in cases of "unsubstantiated" abuse, is intertwined with and dependent on, there being a conference with respect to that finding. Pursuant to subsection (c)(4)(iii), "An individual may request a

contested case hearing in the case of a finding of unsubstantiated abuse or neglect only as provided in this paragraph," and subsection (c)(4)(i) permits such a request, made in writing and within the time prescribed, "in accordance with subsection (b) of this section" for the purpose of "appeal[ing] the outcome of the conference." Unless, in other words, a conference concerning the "unsubstantiated" finding has been timely and properly sought, and held, there could not be an outcome to appeal. Consequently, because of the denial of the conference, the respondents were thereby precluded from appealing.

■■■ The problem here presented arose when the Department, believing § 5–706.1 to be ambiguous, sought to clarify it by regulation. In so doing, it became subject to two conflicting sets of rules, as the respondents correctly point out. Administrative agencies have broad authority to promulgate regulations, to be sure, but the exercise of that authority, granted by the Legislature, must be consistent, and not in conflict, with the statute the regulations are intended to implement. We have consistently held that the statute must control. *Lussier v. Maryland Racing Com'n*, 343 Md. 681, 688, 684 A.2d 804, 807 (1996) ("[W]here the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the agency's regulations are valid under the statute if they do not contradict the statutory language or purpose."); *Christ by Christ v. Maryland Dept. of Natural Resources*, 335 Md. 427, 437–38, 644 A.2d 34, 39 (1994) ("[T]his Court has upheld [an] agency's rules or regulations as long as they did not contradict the language or purpose of [a] statute."). Both COMAR 07.02.07.16B and 07.02.26.05B conflict with the plain language of § 5–706.1, as well as other relevant provisions in Title 5, Subtitle 7. As such, they must yield to the statute.

To begin, the petitioner's argument, urging this Court to recognize a distinction between "alleged" abuse or neglect, and "suspected" abuse or neglect, and to adopt COMAR 07.02.07.16B's formulation of the former, as meaning "found responsible" for "suspected" abuse or neglect, is not only in

conflict with statutory authority, it is simply incorrect English. An "allegation" is defined by WEBSTER'S NEW INTERNATIONAL DICTIONARY 55 (3d ed.1986) as "an assertion unsupported and by implication regarded as unsupportable." To "allege," accordingly, is "to assert, affirm, state *without proof* or before proving" (emphasis added); *Id.* Similarly, to "suspect" is defined as the act of imagining one "to be guilty or culpable on slight evidence *without proof,*" while "suspected" is defined as "believed guilty, likely, or doubtful." *Id.* at 2303 (emphasis added). In contrast to these definitions, a person "found responsible" for, in this context, neglect or abuse, is one who is "answerable as the primary cause, motive, or agent." Unlike "suspicion" or "allegation," which involves conjecture in the absence—and often, contingent on the discovery—of proof, being "found responsible" is a final, unequivocal conclusion. The plain meaning of these words, alone, renders COMAR 07.02.07.16B, and the petitioner's position in support of it, untenable.

Additionally, the Department's provision of notice to the respondents is inconsistent with the petitioner's interpretation of § 5–706.1(a) and its argument. Subsection (a) requires that notice be provided, "[w]ithin 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect" to any individual "alleged to have abused or neglected a child." Accepting the Department's interpretation of this provision, as "clarified" by CO-MAR 07.02.07.16B, the respondents, being the subjects of "alleged" abuse in an "unsubstantiated" case, should not only have been foreclosed from a conference and an appeal, but were not even entitled to notice, since they were not "found responsible" for that abuse. As we have seen, the Department timely gave notice to the respondents. Having considered them as "alleged to have abused" a child for the purposes of notice, it is difficult to understand why they do not occupy the same status for purposes of the prescribed conference. Section 5–706.1(a) and (c) are inextricably linked. The notice right provided by subsection (a) is what triggers the conference right under subsection (c). It simply does not make

sense for the Department to adhere to the plain language of the statute in providing the required notice under subsection (a), and to depart so starkly from this language for the remainder of the post-investigation process.

■ A review of COMAR 07.02.07.16B, in comparison to § 5–706.1(a), as well as other provisions in Title 5, Subtitle 7, further illuminates the inconsistencies between the regulation and the statute. When we undertake to interpret a statute, we do not review it in a vacuum, "nor do we confine strictly our interpretation of [the] statute's plain language to the isolated section alone." *Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18, 29 (2010). Instead, "we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Kushell v. Dept. of Natural Resources*, 385 Md. 563, 577, 870 A.2d 186, 193 (2005). Accordingly, the respondents draw our attention, for instance, to § 5–701(v), which defines a "report" as "an *allegation* of abuse or neglect. . . ." (Emphasis added). In other portions of the statute, a report is the action that *initiates* the investigation by the Department, not the final conclusion the Department makes at the close of its investigation. *See* §§ 5–704, 5–705. COMAR 07.02.07.16B interprets an "allegation" as a finding of responsibility. That is in clear conflict with multiple statutory provisions which define it otherwise.

COMAR 07.02.26.05B, which was the Department's stated basis for its denial of the respondents' requests for conference, is also incompatible with the plain language of § 5–706.1(c). Specifically, while § 5–706.1(c)(1) expressly grants the right to a conference, and the right to an appeal, to those individuals who wish to contest findings of "unsubstantiated abuse or neglect," COMAR 07.02.26.05B states that only "[a]n individual *found responsible* for unsubstantiated child abuse or neglect may appeal the finding." (emphasis added). This language conflicts with § 5–706.1(c) because, unlike 07.02.26.05B, the statute does not differentiate between individuals who are found responsible for "unsubstantiated" child abuse, and those

who are not. Indeed, in contrast to the agency regulation, subsection (c) grants the right to a conference in *all* "unsubstantiated" cases, with no further limiting language. This language plainly and unambiguously demonstrates the legislative intent to make an appeal right available in all such instances. Had the Legislature intended to limit the right, as COMAR 07.02.26.05B seeks to do, it simply could have inserted qualifying language. This is further buttressed by looking to § 5–706.1(a)(3), which specifically requires that individuals who have been "found responsible for indicated abuse or neglect" also be notified, as a separate and additional matter, that they "may be identified in a central registry." As we stated in *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002), we presume, looking to the plain language of a statute, that the Legislature "meant what it said and said what it meant."

Additionally, as we have indicated, *supra,* FL § 5–701(m), (w) and (y) define three categories of findings that may be reached by the Department following an investigation: "indicated," "unsubstantiated," and "ruled out." The respondents correctly note that COMAR 07.02.26.05B conflicts with the statute by essentially expanding the number of categories to four: "indicated," "ruled out," "unsubstantiated/found responsible," and "unsubstantiated/not found responsible." This conflict is made more apparent by looking to FL § 5–714(e) which expressly prohibits the Department from identifying an individual, in "unsubstantiated" cases, as "responsible" for abuse. *See supra* note 9.

COMAR 07.02.26.05B not only clearly conflicts with the statutory language in question, but it is illogical in meaning, and in effect. As we have seen, "unsubstantiated" is defined by § 5–701(y) as "a finding that there is an *insufficient amount of evidence* to support a finding of indicated or ruled out." Stated differently, an "unsubstantiated" finding demonstrates that the Department's investigation did not, or was unable to, find sufficient proof to support "indicated" abuse— that is, to find the individual responsible for such abuse—and was also unable to uncover a sufficient basis to "rule[ ] out"

entirely the allegations against the accused individual. It is an oxymoron to state that an individual could be "found responsible" or "not found responsible" for "unsubstantiated abuse or neglect." It would also be improper, on the basis of admittedly insufficient evidence, for the Department to make any such declarations of responsibility, a principle reflected by § 5–714(e). Furthermore, with an "indicated" finding essentially denoting responsibility, FL § 5–701(m), and "ruled out" establishing an individual's innocence, FL § 5–701(w), it would be redundant and arbitrary to, again, bifurcate the category of "unsubstantiated" findings in such a manner.

The effect of the Department's arbitrary reorganization of § 5–701(y), § 5–706.1(a), and § 5–706.1(c) is to perpetrate an injustice on the respondents, and other similarly situated individuals, by denying them the right to review the evidence against them, to appeal the findings of the Department and the opportunity to clear their names. This, too, is illogical, since an individual, whom the Department finds responsible for "unsubstantiated" abuse is provided with the opportunity to challenge that finding and clear his or her name, whereas an individual, whom it finds not responsible pursuant to the same finding is denied that right and, in addition and with no avenue for recourse, is listed in the central registry as associated with a case of suspected child abuse.[11] While, as the

---

11. FL § 5–714, which governs the contents and maintenance of a central registry, states, in pertinent part:

"(b) *Source of information.*—(1) Each local department shall provide the information for a central registry.

"(2) Except for identifying information authorized under subsection (d) of this section, a central registry may not include information from a local department case file until any individual found responsible for indicated or unsubstantiated child abuse or neglect has:

"(i) been found guilty of any criminal charge arising from the alleged abuse or neglect;

"(ii) unsuccessfully appealed the finding in accordance with the procedures established under § 5–706.1 of this subtitle; or

"(iii) failed to exercise the appeal rights within the time frames specified in § 5–706.1 of this subtitle, Title 10, Subtitle 2 of the State Government Article, or the Maryland Rules.

respondent notes, "the consequences are exactly the same . . . , the appeal rights are completely opposite."

The Court of Special Appeals addressed this issue, stating: "In the case at bar, COMAR 07.02.26.05B confines the 'Unsubstantiated Child Abuse or Neglect' subsection of the regulation to *only* those individuals who have been *'found responsible'* of said unsubstantiated abuse or neglect. Conversely, the corresponding statute, FL § 5–706.1(c), makes no mention of any requirement that the individual be 'found responsible'; instead the focus is on whether the case itself resulted in 'a finding of unsubstantiated abuse or neglect.' Moreover, without a right to conference, appellants Hayward and Dixon can do nothing to clear their names. As persons suspected and involved in child maltreatment cases that were found 'unsubstantiated,' their names are, for five years, listed in the central registry. They are not listed as persons found guilty of abuse or neglect *per se,* but their personal information is identifiable in relation to there having been an accusation and a subsequent investigation. In addition, BCPSS, the employer of both appellants, is by copied letter on notice that neither case was 'ruled out' because there was not enough evidence to determine whether or not the alleged abuse did in fact take place. And, as a result of the report/investigation, it has been 'recommended' that [the respondent] Hayward 'receive additional training

---

"(c) *Availability of information.*—The information in a central registry shall be at the disposal of:
"(1) the protective services staff of the Administration;
"(2) the protective services staffs of local departments who are investigating a report of suspected abuse or neglect; and
"(3) law enforcement personnel who are investigating a report of suspected abuse or neglect.
"(d) *Identifying information.*—(1) Except as provided in paragraph (2) of this subsection, and subject to subsection (e) of this section, a central registry may contain identifying information related to an investigation of abuse or neglect.
"(2) A central registry may not contain identifying information related to an investigation of abuse or neglect if:
"(i) abuse or neglect has been ruled out; or
"(ii) the abuse or neglect finding has been expunged in accordance with § 5–707(b)(1) of this subtitle.

in methods of child restraint in order to avoid future incidents of inappropriate physical contact with children.' The aftermath of these 'unsubstantiated' findings are undeniably detrimental personally and occupationally; innocent persons, just as persons held 'responsible,' ought to have an *opportunity to clear their names and remove them entirely from that registry.*"

*Hayward,* 177 Md.App. 402, 413, 935 A.2d 493, 499–500 (emphasis added). The intermediate appellate court went on to note:

"The 'identifying information' of [the respondents] Hayward and Dixon is, as a result of this case, in the registry and available to protective services of both the administration and local departments as well as law enforcement personnel. That information when accessed presents an obvious correlation between the names identified and reported allegations of child maltreatment.

"Any connection with the central registry, even mere inclusion of 'identifying information,' has an inherently negative effect on the employer/employee relationship and should give rise to [the respondents'] right to clear themselves of that detriment. Denying [the respondents'] the right to an appeal leaves them with a blemished record and no opportunity to defend themselves."

*Id.,* 177 Md.App. at 415–16, 935 A.2d at 501.

We agree.

It is rather difficult to imagine how, in the words of the petitioner, "no adverse inference can be drawn" from the information entered into the central registry. Information identifying the respondents [12] as suspected abusers, as a result

---

12. The "identifying information" entered into the registry is defined by FL § 5–701(*l*) as:

"[T]he name of:
 "(1) the child who is alleged to have been abused or neglected;
 "(2) a member of the household of the child;
 "(3) a parent or legal guardian of the child; or

of the "unsubstantiated" findings, is available in the registry to "protective services of both the administration and local departments as well as law enforcement personnel." *Id.* While this information may not state that the respondents were found responsible for the conduct, or directly link them to it, the stigma attached to child abuse is such that this mere suspicion may cast a significant shadow on their character, especially as they are employees of a school system. *See e.g. Hodge v. Carroll County Dept. of Soc. Servs.*, 812 F.Supp. 593, 604 (D.Md.1992) *rev'd on other grounds, Hodge v. Jones*, 31 F.3d 157 (4th Cir.1994) ("[E]ven in a record of 'unsubstantiated' child abuse, it requires no great leap of faith to conclude that at least one of the [individuals] listed in the record is suspected of child abuse, regardless of whether the record identifies them explicitly in that way....").

We dealt with a similar issue in *Montgomery County Dept. of Soc. Servs. v. L.D.*, 349 Md. 239, 707 A.2d 1331. There, we undertook to clarify what, exactly, constitutes a central registry. *Id.*, 349 Md. at 247, 707 A.2d at 1335. We held that two computerized central databases, the Automated Master File (AMF), and the Client Information System (CIS), are both central registries, because they are "statewide, comprehensive databases containing information identifying suspected child abusers, available on a statewide basis...." *Id.*, 349 Md. at 260, 707 A.2d at 1341. The petitioner cites that case in support of its position, arguing that our holding in that case establishes appeal rights only for individuals found responsible of abuse or neglect. It does not. Our holding in *L.D.* did not address that issue, nor did we articulate any limits on the right to appeal based on the nature of a local department's findings. In fact, as we see it, our analysis cuts against the petitioner's arguments.

The local department in *L.D.*, as does the petitioner in this case, argued that since individuals subject to "unsubstantiated" findings of abuse or neglect were not specifically denoted

---

"(4) an individual suspected of being responsible for abuse or neglect of the child."

as the perpetrators of abuse or neglect in the central registry, but rather, were simply listed as being "associated with the incident," that scheme did not "enable others accessing the records to discern from the list who committed the abuse or neglect." *Id.*, 349 Md. at 266, 707 A.2d at 1344. We disagreed with the local department, observing:

"Under section 5–701(b) and under DHR's own regulations, abuse can be committed only by a parent, a person responsible for the child's supervision or having permanent or temporary care or custody of the child, or a household or family member. Neglect can be committed only by a parent or person responsible for the child's supervision or having permanent or temporary care or custody. *See* § 5–701(p) and COMAR 07.02.07.02B (7)(a).[13] The statute and these regulations narrow who among the list of individuals associated with the incident can be a perpetrator. Furthermore, the AMF and CIS display the particular finding resulting from the investigation, as well as the ages of the individuals, so one reviewing the record easily can discern who on the record is an adult and who is a child. Therefore, anyone reading a record can learn that the perpetrator is one of the adults listed who necessarily must fall into the relationship categories described above.

"To the extent the local departments presuppose that many individuals associated with the incident will be listed on the record, thereby decoying the real perpetrator, this may not be the case. If, for example, an anonymous report of abuse involved a single parent and one child, someone reviewing records related to this incident on the AMF or CIS could infer easily from that record who is the parent listed on the

---

13. COMAR 07.02.07.02B (7) states:

"Child abuse" means one or more of the following by a parent, caretaker, or household or family member:

"(a) Physical injury, not necessarily visible, or mental injury of a child, under circumstances that indicate that the child's health or welfare is harmed or at substantial risk of being harmed; or
"(b) Sexual abuse of a child, regardless of whether the child has physical injuries."

registry. Additionally, the reviewer can discern that the child and parent are entered in the database because of a finding of indicated or unsubstantiated abuse or neglect because no other persons are listed and from the disposition of the case therefore can infer that the parent is responsible for the abuse or neglect. Accordingly, we believe the AMF and CIS registries sufficiently identify individuals suspected by local departments of abuse or neglect . . . ."

*Id.*, 349 Md. at 266–67, 707 A.2d at 1344–45 (citations omitted).

This analysis, regarding the effect of a central registry, is fully applicable to the facts of this case. While the respondents are not explicitly named as responsible for abuse in the central registry, as the petitioner explained in its oral argument before the Circuit Court, they are listed as being "associated" with the case. It would not be difficult for an interested party to determine, upon even a cursory review of § 5–701 and § 5–714, that those individuals are listed because they were, at some point, suspected of abusing or neglecting a child. This suspicion, as we have stated, is enough to raise a question about the character of those individuals. They are certainly entitled to the opportunity to erase this doubt.

This Court has recognized that although a central registry serves an important function in deterring and preventing child abuse and neglect, we must seek "a balance between the critical need to investigate and prosecute child abusers and neglectors and the equally critical need to allow persons accused of abuse and neglect the opportunity to clear their names before dissemination throughout the entire state." *L.D.*, 349 Md. at 275, 707 A.2d at 1349. This is especially the case where such identification is based upon an investigation that did not uncover sufficient information to declare, definitively, either responsibility, or the lack thereof. We believe that the respondents were unjustly denied this opportunity as a result of the Department's denial of their appeal rights.

The petitioner also misconstrues the holding of *C.S. v. Prince George's County Dept. of Soc. Servs.*, 343 Md. 14, 680 A.2d 470 (1996), interpreting it as "providing appeal rights

only to individuals 'found responsible' for child abuse or neglect by a local department." In *C.S.*, an investigation of the petitioner culminated, unlike here, in a finding of "indicated abuse." 343 Md. at 22, 680 A.2d at 474. Also, unlike here, the petitioner in that case was properly granted a conference pursuant to § 5–706.1(c). *Id.* The question, in that case, concerned the proper hearing procedures to be employed prior to including the individual's name in a central registry. *Id.*, 343 Md. at 17, 680 A.2d at 472. The issue arose, however, only after an Administrative Law Judge had rendered a final decision on the issue-that is, after a § 5–706.1(c) conference had been granted, thus allowing an individual to appeal the outcome of the conference before an ALJ in the first place. *Id.*, 343 Md. at 22, 680 A.2d at 474. Our holding in that case, that a person found responsible for child abuse or neglect is entitled to a "contested case hearing" prior to having his or her name entered into a central registry, therefore addresses a set of circumstances distinct from those before the court today. *Id.*, 343 Md. at 33, 680 A.2d at 480. Furthermore, we certainly did not, as the petitioner suggests, undertake to limit appeal rights only to those individuals "found responsible" of abuse or neglect. We simply addressed the fact scenario before the Court, involving an individual who was actually found responsible for "indicated" child abuse. *Id.*, 343 Md. at 22, 680 A.2d at 474.

We reiterate the principle that while administrative agencies have broad authority to promulgate regulations, that authority is granted by the Legislature; thus, where, as here, an agency regulation conflicts with a statute, the statute must control. *Christ by Christ*, 335 Md. at 437–38, 644 A.2d at 39. COMAR 07.02.07.16B and COMAR 07.02.26.05B both conflict with the plain language of § 5–706.1, as well as other provisions of Title 5, Subtitle 7 and, as a result, we do not, and cannot, give effect to those regulations. The controlling statute, § 5–706.1(c), requires that the respondents' request for a conference be granted, and that they be afforded a right to an appeal.

 Additionally, as we have consistently stated when interpreting statutes, "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Lockshin,* 412 Md. at 276, 987 A.2d at 29. Construing the statute as the petitioner suggests we do, as we have seen, would result in just such illogical consequences. The plain language of § 5–706.1(c) expressly grants appeal rights to individuals who have been investigated by the Department, which determined that the allegations against them were "unsubstantiated."

## IV. Conclusion

The Circuit Court for Baltimore City erred by adopting the Department's interpretation of § 5–706.1 and, as a result, dismissing the respondents' consolidated Complaints for Writ of Mandamus. That interpretation was "arbitrary" and "capricious," *Nolan,* 343 Md. at 146, 680 A.2d at 1048, because, as we have seen, the plain language of the statute required the Circuit Court to find that the respondents were entitled to an appeal, which, in turn, would have provided the respondents with a basis to obtain judicial review of any adverse administrative decision. By failing to give effect to the plain language of the statute, by ratifying a construction that denied the respondents any review, the court gave substance to, and, in fact, proved, their argument that there was "a lack of an available procedure for obtaining review," which was the result of illegal, arbitrary, capricious and unreasonable agency action. *Nolan,* 343 Md. at 146, 680 A.2d at 1048.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

